Edwin Raymond FITZGERALD, Sr., and
his wife, Patricia B. Fitzgerald,
Plaintiffs,

v.

COMPANIA NAVIERA LA MOLINERA
et al., Defendants.

Mrs. Louise Cousins PRITCHARD, Individually and as Administratrix of the
Estate of Noah Pritchard, and as Administratrix of the Estate of Nolan Gerard Pritchard, Plaintiff,

v.

COMPANIA NAVIERA LA MOLINERA
et al., Defendants.

Civ. A. Nos. 74–598, 74–2153.

United States District Court,
E. D. Louisiana.

Feb. 6, 1975.

See also, D.C., 394 F.Supp. 402.

Steven R. Plotkin, Owen J. Bradley, New Orleans, La., for plaintiff Edwin Raymond Fitzgerald, Sr. and his wife, Patricia B. Fitzgerald.

Ben Trombatore, Kenner, La., for plaintiff, Mrs. Louise Cousins Pritchard.

A. R. Christovich, Jr., John E. Galloway, H. Barton Williams, New Orleans, La., for defendant New Orleans Public Grain Elevator.

William E. Wright, Robert J. Barbier, New Orleans, La., for defendant Marine Trading, Ltd., of Nassau and Marine Chartering Co.

Rene S. Paysse, F. A. Courtenay, Jr., New Orleans, La., James J. Donovan, Metairie, La., for defendant Cargill, Inc.

H. Edward Weidlich, Jr., New Orleans, La., for defendant Shilstone Testing Laboratories.

Breard Snellings, New Orleans, La., for defendants Guillory, Squires, Miller & Colley.

David R. Normann, New Orleans, La., for defendant Research Products Co.

Donald R. Kronenberger, Jr., Washington, D. C., for United States.

Donald L. King, New Orleans, La., for defendant Stauffer Chemical Co.

ALVIN B. RUBIN, District Judge:

■ Marine Trading, Ltd. of Nassau and Marine Chartering Co., the vessel owner and charterer, have moved for summary judgment on the basis that the record shows they breached no legal duty owed to the plaintiffs' decedents. Any possible claim must be based on negligence since the vessel no longer owes a warranty of seaworthiness even if the plaintiffs be considered constructive seamen. 33 U.S.C. § 905(b).

The plaintiffs and cross-claimants have advanced several theories upon which to base the negligence. They claim the vessel

a) Negligently caused the erection of a temporary wooden bulkhead in Hold No. 1 of the La Molinera which prevented adequate aeration of the hold through use of the vessel's blowers and ventilation system.

b) Failed to determine what fumigant was being used in its holds and failed to advise personnel coming onto the vessel for purposes in aid of the ship's mission of the presence of the fumigant.

c) Failed to maintain its blowers and ventilation system in good working order.

d) Failed to post warning signs as to presence of fumigant in its holds.

Principal reliance is placed upon the master's failure to warn the decedents that a temporary bulkhead in the hold prevented the use of the blowers and thus obstructed the ventilation of the hold.

■ There is authority that, since the 1972 amendments to the Longshoremen and Harbor Workers Compensation Act, a vessel is held to the standards required of an owner or possessor of land. *Ramirez v. Toko Kaiun*, N.D.Cal., 1974, 385 F.Supp. 644; *Fedison v. The Vessel Wislica*, E.D.La., 1974, 382 F.Supp. 4; *Hite v. Maritime Overseas Corp.*, E.D. Tex., 1974, 380 F.Supp. 222. As stated in *Hite, supra*

The owner of a premise who contracts with an independent contractor (business invitee) to perform services for the owner upon the owner's premises owes a duty to the independent contractor and his employees to exercise reasonable care to have the premise in a reasonably safe condition for use by the independent contractor and to give said contractor warning of any concealed or latent defects that are known by the owner and not by the independent contractor. *The owner of a premise is under no duty to warn the independent contractor or his employees of dangers or [sic] open and obvious defects which are known to the independent contractor or his employees or which could be readily observed by said employees in the exercise of ordinary care.* [Emphasis added].

See also W. Prosser, Law of Torts § 61 at 394 (4th ed. 1971); Restatement 2d of Torts § 343A. We need not go so far here as to adopt that criterion unconditionally; in any event the Congress has manifested its intention that a finding of negligence requires a showing of the kind of negligence that has been traditional in land cases rather than the very liberal criteria for Jones Act negligence. See discussion of the latter in *Spinks v. Chevron Oil Co.*, 5th Cir. 1975, 507 F. 2d 216.

■ Applying this standard to the facts of this case, as set forth in the record, it is clear that the vessel breached no duty. It is admitted, indeed it is an important element of the claim, that the wooden bulkhead completely blocked off the section of the hold in which the fatal occurrence took place, and that from this part of the hold it was impossible to detect the existence of any blowers. Thus, the defect in the ventilation of the hold, the existence of a barrier to the movement of air, was readily visible to anyone entering the hold.

■ There is, however, a more compelling reason to grant this motion for summary judgment. The sine qua non of each of these assertions of negligence is proof that the vessel interests had knowledge that the vessel was to be or had been fumigated. The opponents of the motion have failed to establish this.

The master of the vessel, Captain Hoo, testified in his deposition that he did not know that the grain had been fumigated. To refute this the plaintiffs and cross-claimants attempt to point out inconsistencies in the captain's testimo-

ny and thus dispute his credibility. In many instances this would be sufficient to defeat a motion for summary judgment; demeanor of the witness

> may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies.

Dyer v. MacDougall, 2d Cir. 1952, 201 F.2d 265, 269. This approach is inapposite here. This is not a jury trial; the court will hear the evidence at trial as well as decide this motion. Furthermore, the parties have informed the court at pre-trial conference that the master will not testify at trial; his testimony will be presented by the same deposition offered by the mover in support of this motion. In short, no further evidence will be presented on the issue of whether the master had knowledge that fumigation had taken place. It therefore seems entirely appropriate to decide this issue now, rather than requiring these defendants to go through the time consuming and expensive process of making final preparation for trial, and going through the trial itself, only to have the court decide, on the basis of the same evidence now before the court, that the vessel interests were not negligent.

It is also claimed that knowledge of the vessel interests can be shown by demonstrating the likely knowledge of the crew members. In an attempt to show that the crew knew of the fumigation, the opponents to the motion point to the fact that the crew members closed the hatch covers shortly after the fumigation took place. It is mere conjecture that this establishes that the crew members knew that fumigation had oc-

curred; many plausible reasons have been and could be advanced for the closing of the hatches. Captain Hoo attributes the closing to rain; it also is quite possible the hatches were closed simply because someone asked the crew members to do so.[1] The mere presence of the crew members aboard the vessel does not prove their knowledge. As with the evidence relevant to the master's knowledge, there is nothing more to be presented—the crew members will not testify at trial, nor have they been deposed. A motion for summary judgment obliges those opposing it to come forward with evidence supporting their position; this has not been done.

Without knowledge that the vessel was to be fumigated, there was no duty owed the decedents or the cross-claimants by the owner and charterer. In Baum v. United States, 5 Cir. 1970, 427 F.2d 215, the court held:

> [W]here the Government is not in control of the incident which created the risk . . ., and where the risk is not a latent one created prior to the Government's loss of control . . . nor an inherently dangerous one wherein the shipowner requires the work to be done in a manner inherently dangerous to human safety . . . then it would be "manifestly unfair" to impose on the Government a duty to provide safety measures for employees of the contractor. 427 F.2d at 219 [citations omitted].

While there are factual differences between *Baum* and the instant case, the principle there stated is applicable here. If the vessel interests are to be liable only for negligence, and owe no duty to furnish a seaworthy vessel, it would be "manifestly unfair" to hold the vessel interests liable for the untoward results occurring in the course of work they have turned over completely to an independent contractor. The loading operations were completely under the con-

---

[1]. It was revealed in oral argument that the crew members were all Spanish speaking; this further negates the inferences of knowledge from the fact of their closing the hatches —someone might well have conveyed the message that the hatches were to be closed without the crew member's understanding why they were to be closed.

trol of parties other than the vessel. Of course, no one may delegate the duty to exercise reasonable care if the work to be done is "inherently dangerous," Orr v. United States, 5 Cir. 1973, 486 F.2d 270; W. Prosser, Law of Torts § 71 at 472; but there is nothing "inherently dangerous" in loading a vessel with grain. The fact that the contractor may thereafter, unbeknownst to the vessel interests, engage in an activity that may be assumed for present purposes to be "inherently dangerous" (i. e., fumigation), should not create a duty to supervise the contractor. It would indeed be "manifestly unfair" to say that the vessel interests may rely on the contractor to perform the work in a safe manner, and then hold them negligent for failing to assume a vigilant concern for the well being of the contractor's employees or to guard against the possible occurrence of events of which he has no notice. The same reasons that deny recovery to the plaintiffs prevent recovery by the cross claimants. There being no duty to either the decedents or the cross-claimants, there can be no liability.

Accordingly, the motion for summary judgment is granted.