**Mrs. Joyce Roy STOCKSTILL, Widow of Lowell Stockstill, individually and as Natural Tutrix of the minor children, etc., Plaintiff-Appellant,**

v.

**GYPSUM TRANSPORTATION, Defendant-Appellee,**

**Fidelity & Casualty Company of New York, Intervenor.**

No. 77–2439.

United States Court of Appeals, Fifth Circuit.

Dec. 5, 1979.

Rehearing and Rehearing En Banc Denied Jan. 4, 1980.

Charles R. Maloney, New Orleans, La., for plaintiff-appellant.

J. Francois Allain, Paul A. Nalty, New Orleans, La., for defendant-appellee.

Before GEWIN, AINSWORTH and REAVLEY, Circuit Judges.

AINSWORTH, Circuit Judge:

This maritime negligence suit was originally brought by Lowell Stockstill against Gypsum Transportation, Ltd., owner of the

vessel GYPSUM QUEEN, for damages for physical injuries sustained when he slipped and fell while working on board the vessel for an independent ship repairer. Buck Kreihs Company, Inc., the marine contractor, was performing extensive repairs on the vessel at the contractor's repair facility upon the navigable waters of the Mississippi River at New Orleans. Stockstill died prior to trial and his surviving widow, Joyce Roy Stockstill, was substituted as plaintiff in her own behalf and for the children of the deceased. The complaint was amended to allege a death claim against defendant.

At the close of all of the evidence at the trial, the district judge granted defendant's motion for a directed verdict. Claimant brings this appeal asserting that the district judge erred in directing a verdict against her. After a careful review of the record, we find that the district court was correct in its ruling and affirm.

On April 30, 1973, Lowell Stockstill and Shady Phillips were sent by their union to work as welders for Buck Kreihs Company on board the GYPSUM QUEEN. They were assigned to the evening shift, and at approximately 5 p. m., upon the conclusion of the day shift, the men boarded the vessel. Anthony Battaglia, a Buck Kreihs "pusher" or foreman, took them to the forepeak tank at the bow of the vessel where they were to work. Battaglia entered the tank first through a manhole in the deck and descended a vertical ladder to the first level of staging previously set up by other Buck Kreihs employees. Stockstill followed. After descending the ladder approximately halfway between the deck and the staging so that his head was below deck level, Stockstill reached up to Shady Phillips, who handed him his welding hood, gloves and other equipment. He took the equipment with his right hand, holding on to a rung of the ladder with his left hand. As he attempted to hand down the equipment to Battaglia, he lost his balance and fell from the ladder. Stockstill fractured his right ankle as a result of the fall.

At trial Stockstill's deposition was admitted into evidence. He stated therein that he fell from the ladder when his left hand slipped from the rung. Subsequent to the accident, he noticed oil or grease on his hand. His wife also testified that she found a black substance on her husband's hand. Stockstill's friend Shady Phillips testified that there was a patch of oil about four feet across on the deck leading to the ladder in the hold where the fall occurred.

The district court granted a directed verdict in favor of defendant, finding that while there was some evidence that the ship's crew was on the vessel at the time of the accident, none of the ship's personnel was participating in the work being performed by Buck Kreihs Company nor were they in the area of the accident at the time of Stockstill's fall. In written Reasons for Directed Verdict, the court concluded that plaintiff not only failed to prove any affirmative negligence on the part of the vessel, but that the evidence failed to show defendant was responsible for a dangerous condition on the ship of which Stockstill was not aware or was not in a position to fully appreciate.

In *Boeing Co. v. Shipman*, 5 Cir., 1969, 411 F.2d 365, 374, we formulated the standard by which the evidence is to be measured in considering a motion for a directed verdict:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury.

█ It is for the court to determine whether a case should be withdrawn from the jury if plaintiff's evidence is inadequate under the *Boeing* test to warrant submission to the jury. However, this does not mean that the court should base its decision on a determination of "which side has the better of the case." *Boeing, supra,* 411 F.2d at 375. All reasonable inferences must be drawn in favor of the party opposed to the motion. On the other hand, "a complete absence of probative facts to support a jury verdict" is not a prerequisite to directing a verdict; but "[t]here must be a conflict in substantial evidence to create a jury question." *Boeing, supra,* 411 F.2d at 375. A review of the record shows that appellant's evidence was insufficient to present a question for the jury.

When Congress amended the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.,* in 1972, it eliminated the shipowner's traditional and absolute liability for breach of the nondelegable duty to provide those who come aboard a vessel with a safe place to work. In its stead, Congress chose to improve the compensation benefits granted an injured employee by his stevedore/employer, at the same time making a vessel liable only for its own negligence.[1] By adding section 905(b)[2] to the Act, Congress "specifically preclude[d] an employee of an independent stevedoring contractor from bringing a suit

against the vessel 'based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.'" *Bess v. Agromar Line,* 4 Cir., 1975, 518 F.2d 738, 741 (quoting 33 U.S.C. § 905(b)). The reason for limiting recovery to an action based solely on a traditional theory of negligence is set out in the House Report on the bill which proposed the amendments to the Act:

> The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as "unseaworthiness", "non-delegable duty", or the like.

H.R.Rep.No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin. News, pp. 4698, 4703.

█ Having eliminated the doctrine of unseaworthiness as a basis of liability against the vessel, "Congress did not intend that a concept of negligence approximating no-fault liability should take its place." *Napoli v. Hellenic Lines, Ltd.,* 2 Cir., 1976, 536 F.2d 505, 507. Rather, it is suggested in the legislative history of the amendments that a uniform federal common law stem-

1. In the House Report on the bill which proposed the amendment the Committee stated:
   Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness.
   H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4698, 4703.

2. (b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to

the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.
33 U.S.C. § 905(b).

ming from land-based negligence concepts be developed.[3] Accordingly, this court in *Gay v. Ocean Transport & Trading, Ltd.,* 5 Cir., 1977, 546 F.2d 1233, 1238,[4] adopted the general standards set forth in the Restatement (Second) of Torts for determining what is negligence under section 905(b).[5]

Appellant's claim is apparently based on the argument that the shipowner had knowledge of a hazardous condition on the vessel by virtue of the oil patch on the deck in the area of the accident. A review of the record reveals no evidence of any action by any member of the vessel's crew which would permit a reasonable finding that the ship's crew caused either the accident or the grease condition which it is contended resulted in the accident to Stockstill. Buck Kreihs' foreman Anthony Battaglia testified at trial that the ship's repairer "definitely" was in control of the area of the accident. He further stated that although it would not be unusual for the crew to be engaged in some work on the ship during the time it was out of commission for re-

pairs, during the two-week period Battaglia worked on the GYPSUM QUEEN, he never saw any member of the crew in the forepeak tank where the accident occurred.[6] Furthermore, not only was Buck Kreihs Company engaged in welding repairs in the forepeak tank of the vessel, according to the work order and invoices introduced into evidence by plaintiff, but the independent contractor supplied labor equipment and materials to repair and clean nearly the entire ship, at a cost to the vessel owner of approximately $218,000.[7]

In granting the directed verdict the district court relied on the fact that the dangerous condition that allegedly caused the injury to Stockstill was open, obvious, and known to him before his injury. The rule in this circuit relative to the liability of a vessel for known or obvious dangers is expressed in *Gay, supra,* 546 F.2d at 1238, which adopted the principles enunciated in section 343A(1) of the Restatement (Second) of Torts (1965), which section reads as follows:

---

**3.** The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position vis a vis his rights against the vessel as a third party than is an employee who is injured on land, and on the other hand, that the vessel shall not be liable as a third party unless it is proven to have acted or have failed to act in a negligent manner such as would render a land-based third party in non-maritime pursuits liable under similar circumstances.
H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4698, 4704.

**4.** *See also Brown v. Mitsubishi Shintaku Ginko,* 5 Cir., 1977, 550 F.2d 331, 333–34.

**5.** Restatement (Second) of Torts § 342 (1965) provides:
A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
(c) the licensees do not know or have reason to know of the condition and the risk involved.

Section 343 states:
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against danger.

**6.** The only evidence of the ship's personnel performing any work on the vessel in conjunction with Buck Kreihs was supplied by John Lamarco, a Buck Kreihs employee who testified that he furnished the vessel's chief engineer three welders to work with the ship's crew in the engine room, which is not in the vicinity of the forepeak tank where the accident took place.

**7.** We note in passing that in the first page of the Buck Kreihs Company invoice, the contractor was to supply labor, material and equipment to pump out fuel oil from the # 2 fuel oil tank into a barge for storage and to replace it after cleaning the tank, removing the sludge and disposing of it.

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

See also in this regard, *Napoli v. Hellenic Lines*, 2 Cir., 1976, 536 F.2d 505; *Bess v. Agromar Line*, 4 Cir., 1975, 518 F.2d 738.

■ This court has rejected the contention both in *Gay, supra*, 546 F.2d at 1239–40, and later in *Brown v. Mitsubishi Shintaku Ginko*, 5 Cir., 1977, 550 F.2d 331, 333–34, that the shipowner has an automatic nondelegable duty to provide the longshoreman with a safe place to work. Instead, we have formulated a rule that the owner of a vessel is not liable for known or obvious hazards where either the stevedore or his employee is in better position to appreciate fully the risk and avoid the danger, particularly where the danger is within the control of the stevedore's own employees.[8]

■ In this case, not only was the danger of the grease open and obvious to Stockstill and his coworkers, but the area where it was observed was under the control of the ship repairer, Buck Kreihs, and presented a risk of which the plaintiff and his employer were fully able to appreciate and avoid. Further, there was no evidence that the shipowner or any member of the crew knew or should have known of grease or oil on the deck. At trial, Shady Phillips described in some detail the condition of the oil, stating that it appeared as if several persons had walked through it. Phillips also testified, however, that he and Stockstill did not board the vessel until the day shift had departed.

Appellant relies heavily on the fact that some members of the ship's crew were on board the vessel at the time of the accident. Mere presence of the vessel's crew on the ship, however, does not prove knowledge of the hazardous condition. *Fitzgerald v. Compania Naviera La Molinera*, E.D.La., 1975, 394 F.Supp. 413, 416. Moreover, the evidence adduced at trial established a failure of due care by Buck Kreihs Company in violating two Safety and Health Regulations for Ship Repairing promulgated by the Occupational Safety and Health Administration, as follows:

Slippery conditions on walkways or working surfaces shall be eliminated as they occur.

29 C.F.R. § 1915.51(c) (1978);

Hand lines, slings, tackles of adequate strength, or carriers such as tool bags with shoulder straps shall be provided and used to handle tools, materials, and equipment so that employees will have their hands free when using ship's ladders and access ladders. . . .

29 C.F.R. § 1915.71(a) (1978). As the regulations point out, the responsibility for compliance with these rules lies solely with the stevedores or employers of repairmen on board vessels and not with the "owners, operators, agents or masters of vessels." 29 C.F.R. §§ 1915.1(c) & (d) and 1915.2(c).

In eliminating the warranty of seaworthiness as a basis for imposing liability on the shipowner, it is clear that Congress intended to require a showing of negligence on the part of the vessel owner as is required in land-based torts.[9] Since the vessel owner no longer has an absolute duty to furnish a seaworthy vessel, it cannot be held liable for every incident occurring in the course of work performed by and in the control of the independent contractor.[10] Under circumstances here, the vessel owner should not be required to assume "a vigilant concern for the well being of the contractor's employ-

**8.** *See Samuels v. Empresa Lineas Maritimas Argentinas*, 5 Cir., 1978, 573 F.2d 884, 886; *Briley v. Charente S.S. Co., Ltd.*, 5 Cir., 1978, 572 F.2d 498, 499–500; *Hess v. Upper Mississippi Towing Corp.*, 5 Cir., 1977, 559 F.2d 1030, 1035–36, *cert. denied*, 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978).

**9.** *See* note 3 *supra*.

**10.** With regard to the condition of the ship, Shady Phillips stated at trial that "in general it was clean for a ship." Anthony Battaglia also testified that the condition of the area where the accident occurred was, in his estimation, safe.

ees," particularly where they have failed to exercise due care in the course of their work. *Fitzgerald, supra,* 394 F.Supp. at 417. Accordingly, because plaintiff failed to meet his burden of coming forward with sufficient evidence to create a jury question in accordance with the standards set out in *Boeing, supra,* the order of the district court directing a verdict in favor of defendant must be affirmed.

AFFIRMED.

REAVLEY, Circuit Judge, dissenting:

I respectfully dissent, because I understand the evidence and legal question differently.

There is evidence that Stockstill fell because the ladder rung was greasy which caused his left hand to slip. Further, there is evidence that the greasy substance on the ladder was the accumulation of substance from the shoes of those who had walked through oil on the deck of the passageway above the ladder.

Thirty seven members of the crew lived aboard ship. They may not have been working in the vicinity of the ladder when Stockstill fell, but they did have a tool box in the vicinity and Stockstill thought he saw some of the crew near the area prior to his fall. I find no basis for concluding that the shipowner had divested itself of responsibility for any part of the ship or, particularly, for this ladder and passageway. This is not a case where the stevedore contracts to rid the ship of the very danger which causes injury to the stevedore's employee.

To my view it is a case of the owner/occupier of premises and his invitee. The shipowner does not escape liability because it is not shown to have placed the grease on the ladder, nor because it is not shown to have known of the danger. The question here is whether the shipowner *should* have known of the danger. I would conclude that the evidence tends to prove the presence of the oil and grease for a sufficient period of time that by the exercise of reasonable prudence the shipowner would have discovered that danger. The directed verdict was therefore improper.

As for the obviousness of the danger to Stockstill, there is no evidence that he knew of the grease on the ladder or the oil on the deck. I could not say that either were open and obvious to all who walked there the first time. But that is no matter for present purposes, because grease on a ladder or oil on a deck fit the rule which requires the shipowner to anticipate the harm despite obviousness of the danger. Restatement (Second) of Torts (1965) Section 343A(1). This is precisely the subject of this court's comment in *Gay v. Ocean Transport & Trading, Ltd.* (1977), 546 F.2d 1233 at 1240–1242.