**Richard HILL, Plaintiff,**

v.

**TEXACO, INC., Defendant.**

**Civ. A. No. H–77–241.**

United States District Court,
S. D. Texas,
Houston Division.

July 28, 1980.

William R. Edwards, Corpus Christi, Tex., for plaintiff.

Arthur Stamn, Baker & Botts, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SINGLETON, Chief Judge.

The plaintiff, Richard Hill, instituted this Longshoreman's and Harbor Workers' Compensation Act suit, 33 U.S.C. §§ 901, *et seq.*, against Texaco, Inc. for personal injuries he suffered while working as the employee of an independent contractor on board the defendant's vessel, the Texaco Illinois. The plaintiff is a resident of Tennessee. Texaco, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in New York.

The plaintiff filed his suit in the 157th District Court in Harris County, Texas with a request for a jury. The defendant filed a petition for removal to the federal district court, basing jurisdiction upon the diverse citizenship of the parties. The diversity jurisdiction of this court is properly invoked, 28 U.S.C. § 1446(b).

The defendant filed a motion for summary judgment. The court denied the motion.

The case came before the court for trial on March 24, 1980. The parties agreed to waive the jury. The court entered judgment in favor of the plaintiff, awarding him $129,929.72 in damages. Herein the court sets forth its findings of fact and conclusions of law.

The inside of the storage tanks of a vessel rust over time. The rust erodes the metal of the tank, decreasing the thickness of the tank wall. The thinner the tank wall, the less pressure it can sustain. If the wall is too thin and the pressure too great, the tank will burst, its contents may be lost, and the vessel may be severely damaged. To prevent such an accident, the thickness of tanks walls are periodically checked.

The test involves the placement of an electronic probe on the tank wall. The testor knocks off the rust from the area to be tested until the bare metal is evident. (A hammer can be used for this task.) The testor places oil on the transducer (the end of the probe) in order to make a good connection. He presses the probe against the bare metal. The probe electronically reads the thickness of the metal and relays its reading to a machine on the deck of the vessel which is manned by another member of the testing crew.

Performing this test can be hazardous, at least in part due to the dangerous nature of rust. Rust can crack or crumble under pressure; chunks of it may fall off a wall or ceiling. For example, the weight of a testor stepping on a rusty portion of a tank may crumble the rust, causing it to give way beneath him.

The tank on the Texaco Illinois in which the plaintiff fell is 40' high by 25' wide by 50' long. The sides of the tank are lined with stiffeners: shelf–like projections from the wall which are parallel to the floor. The stiffeners are approximately 18" wide. They are placed approximately 3' apart all the way up the wall of the tank. The stiffeners have hand–holds along the edge.

The tank walls and stiffeners of the Texaco Illinois were rusty. Texaco, Inc. contracted with Evans Engineering, Inc. (Evans), an independent contractor, to test the thickness of the metal inside the tanks of the Texaco Illinois. Evans Engineering, Inc. hired Richard Hill, among others, to perform the testing. Evans used Hill approximately seven times before to test the tanks of vessels.

On the third day of Evans' work, the day of the accident, the testing crew set out to test the metal in tank # 8, a rusty tank. Tank # 8 was almost finished being emptied of ballast (water) so it could be loaded later that day. The ballast left moisture on the walls and other surfaces of the tank, creating a dangerous slippery condition on the rusty stiffeners.

Richard Hill was assigned to climb up the stiffeners. He climbed up the stiffeners, stopping to check the thickness of the metal periodically. Hill did not wear a safety belt, which would hook on to the stiffeners, or a safety line, which would be tied onto something stable on deck, although they were available to him.

Both Evans and Texaco, Inc., knew of the dangerous moist and rusty condition inside

the tank and knew that the plaintiff was not protecting himself. Evans was hired to assess the degree of rust in the tanks. The owner of Evans worked on board the Texaco Illinois with his crew. He could see the ballast in the tank and the residue it left on the stiffeners. He also could see that Hill did not use safety equipment. The shipowner's knowledge of the rust is evident from the fact that Texaco contracted with Evans to test the metal thickness; it knew of the moisture because the ballast was being emptied from the tank. Billy Troy Yawn, who boarded as chief mate on the morning of the accident, testified that he knew that the tank was wet and rusty, and that such a condition was dangerous. He testified that he saw Evans' crew, including Hill, on deck in the morning before they went into tank # 8. He saw that they did not have safety lines or other safety equipment. Nevertheless, he did not check to see if they used safety equipment while working in the tank.

In addition, this court infers that the captain and other officers of the Texaco Illinois, who were on board the entire time Evans' crew worked, knew or should have known the method and safety devices Evans' crew used to test the metal thickness, at least by the end of Hill's first day of work.

Although Evans, the crew, and Yawn knew that Hill was not protecting himself against the dangerous condition inside the tank, neither Evans, the crew, nor Yawn took any measures to protect Hill against the danger.

Hill's accident occurred when he was about half–way up the side of the tank. He had difficulty making contact with the probe against the metal to get a reading. He pressed harder on the probe. The pressure exerted on the probe also placed greater pressure on his feet. Rust under his feet, on the stiffener upon which he stood, loosened and gave away. Hill fell to the bottom of the tank.

Hill's fall injured him. The hospital records immediately following the accident diagnosed him as having back, feet, and rib injuries: a fracture of the fourth lumbar vertebrae, fractures of the right and left calcanei, and fracture of the left eighth rib.

Hill continues to suffer from the injuries to his heels and back. He cannot use his foot fully when walking and must wear special shoes. Arthritis has developed in his right foot, related to the fracture. The amount of time he can work and the amount of weight he can lift is limited due to his back injuries. The medical report of Dr. B. York submitted to the U. S. Department of Labor states Hill's back has a 15% permanent physical impairment as a result of the fracture. It states Hill's right foot has an 11–12% permanent partial disability and his left foot is no more than 3% permanently partially disabled as a result of the fracture.

The court concludes that the plaintiff suffered injuries resulting in total incapacity for two years and 20% permanent partial incapacity thereafter. As a direct and proximate result of his injuries, Richard Hill has incurred reasonable medical expenses in the necessary treatment of his injuries and their effects.

As a direct and proximate result of his injuries, plaintiff has suffered a loss of wages and wage–earning capacity. He will also suffer a permanent loss of wage earning capacity in the future.

As a direct and proximate result of his injuries, plaintiff has suffered physical pain and mental anguish in the past. He will continue to suffer pain and anguish from the time of trial until the end of his life.

At the time of his injuries, Richard Hill was 24 years old. At the time of trial he was 29 years old and he had a reasonable life expectancy at 43.3 years.

The legal question presented by this case is whether a shipowner's knowledge (1) that a dangerous condition exists on board the vessel, (2) that an employee of an independent contractor appreciates the danger, and (3) that the employee is failing to protect himself from the dangerous condition, imposes a duty on the shipowner to protect the employee from the danger. The Fifth

Circuit has consistently held that land based standards of negligency apply to causes of action brought under § 905(b) of the Longshoreman's and Harbor Worker's Compensation Act. In the interest of uniformity in the courts throughout the circuit, the Fifth Circuit Court of Appeals adopted the standard set forth in the Restatement (Second) of Torts §§ 342, 343 and 343A (1965) (hereinafter referred to as Restatement) as the circuit's standard for maritime negligence actions. *Gay v. Ocean Transport and Trading, Ltd.*, 546 F.2d 1233, 1242 (5th Cir. 1977).[1] The Restatement §§ 343 and 343A(1) are relevant in this case.

Section 343 states:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against danger.

Restatement of Torts (Second) (American Law Institute 1965).

The comment to § 343 indicates that § 343 should be read together with § 343A. Section 343A(1) provides:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

*Id.* at 1238.

In *Brown v. Mitsubishi Shintaku Ginko*, 550 F.2d 331 (5th Cir. 1977), the Fifth Circuit explained the practical effect of the Restatement §§ 342, 343, and 343A. It wrote,

Those sections impose a duty on a possessor of property to inform invitees (including employees asked to work on the property) of any dangerous conditions present on the property that he knows or should reasonable [sic] know about; relieve the possessor of this duty if invitees should reasonably be expected to discover or realize the danger on their own; but reimpose a duty on the possessor to alleviate the danger if he should reasonably anticipate that invitees might be harmed despite their awareness of the danger.

550 F.2d at 333–334.

Consistent with the Restatement, the circuit court has not imposed liability on a shipowner when it found no evidence that a shipowner knew or should have known of the danger. *Stockstill v. Gypsum Transportation*, 607 F.2d 1112, 1117 (5th Cir. 1979) (grease on an area within the control of the independent contractor).

Also following the Restatement, the circuit court has held that under certain circumstances a stevedore or employee of an independent contractor should reasonably be expected to discover or realize a danger on board a vessel, thereby relieving the shipowner who knows or should know of the danger of any duty to warn or otherwise protect the employee. Those circumstances include where the independent contractor created the dangerous condition, *Brown, supra; Gay, supra, aff'g., Guerra v. Bulk Transport Corp.*, Civ.Act. No. 73–H–1559 (S.D.Tex.1975) (Singleton, J.); where the employee or independent contractor was in complete control of the area in which the hazardous condition exists, *Briley v. Charente Steamship Co., Ltd.*, 575 F.2d 498 (5th Cir. 1978); and where the independent contractor was hired to cure the dangerous condition, *Hess v. Upper Mississippi Towing Co.*, 559 F.2d 1030 (5th Cir. 1977).

These cases do not speak directly to the situation in this case. First, Hill neither created the danger, totally controlled the

---

1. See also, *Stockstill v. Gypsum Transportation*, 607 F.2d 1112, 1116 & nn. 3, 4, & 5 (5th Cir. 1979).

area, nor was hired to cure the danger. More importantly, Hill raises a different problem than *Brown, Briley,* or *Hess*; that is, the shipowner's liability where he knows or should anticipate that the employee will fail to protect himself against the danger.[2] The second clause of the Restatement § 343(b) and the last phrase of § 343A(1) refer to that situation, imposing a duty on the vessel owner to protect such an employee against the danger.

▮ Applying the Restatement's standard to the facts in this case, the court finds that defendant's negligence was a proximate cause of the injuries suffered by the plaintiff. The defendant met the requirements of § 343: Texaco, Inc. (a) knew of, or by the exercise of reasonable care would have discovered the rusty condition of the tank walls and stiffeners, and should have realized that rust on the stiffeners involved an unreasonable risk of harm to the plaintiff; and (b) knew, through Billy Troy Yawn, that the plaintiff was not protecting himself against the harm by using safety equipment; and (c) failed to exercise reasonable care to protect the plaintiff.

Similarly, the defendant was within the parameters of § 343A(1): the danger of the rust was known and obvious to the plaintiff, and Texaco, Inc. could have anticipated the harm despite such knowledge or obviousness, since it knew that the plaintiff was not protecting himself against the danger. Therefore, applying the standard of the Restatement (Second) of Torts §§ 343 and 343A, this court finds that the defendant's negligence was a proximate cause of the plaintiff's injuries.

The court also finds that both the plaintiff and his employer, Evans Engineering, Inc. contributed to the accident through their negligence. Evans should have provided safety equipment for his employees, according to the Occupational Safety and Health Administration regulations, 29 C.F.R. § 1915.84(b) (1979).[3] Hill appreciated the danger involved in his job and should have protected himself from injury by using safety equipment. Evans' and Hill's failure to protect Hill were proximate causes of Hill's accident. The proportions in which the negligence of Texaco, Inc., Evans Engineering, Inc. and Richard Hill contributed to cause Hill's injuries are as follows: Richard Hill, 20%; Evans Engineering, Inc., 60% and Texaco, Inc., 20%.

According to the Supreme Court's decision in *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), in an action under the Longshoremen's and Harbor Workers' Compensation Act, the plaintiff's recovery will be discounted by the percent he is liable for his injuries. If found to be negligent at all, the principal, or owner of the vessel will be liable for the portion of the injuries he caused *and* for the portion of the injuries caused by the plaintiff's employer's negligence. Since the court finds that Texaco, Inc. is liable in some measure, Texaco, Inc. must compensate the plaintiff for its liability and for the employer's liability.

The court notes that at the time of Richard Hill's injuries, his employer, Evans Engineering, Inc., carried a policy of Longshoremen's and Harbor Workers' Compensation insurance issued to it by Hartford Accident and Indemnity Company. Pursu-

---

2. The court notes that two recent Fifth Circuit decisions, of questionable precedential value, relieve the vessel owner of liability where the employee could have protected himself from the danger. The circuit arrived at these decisions notwithstanding the shipowner's knowledge of the danger, without regard to the shipowner's knowledge of the employee's failure to protect himself, and irrespective of who created or controlled the dangerous condition. *Roberts v. Martin Sea Services, Inc. v. Gulf Oil Company, Inc.,* —— F.2d —— No. 78–2219 (5th Cir. 1980); *McCullough v. S/S Coppename,* —— F.2d —— No. 77–1066 (5th Cir. 1979)

(withdrawn from publication by order of the court). The precedential value of these cases is limited, however, because the circuit court withdrew *McCullough* from publication after *Roberts* relied upon it. Therefore, this court will not employ their standards in maritime negligence actions.

3. The independent contractor's failure to comply with the regulation of the Occupational Safety and Health Administration does not relieve a vessel owner of any duty he may owe the plaintiff. 29 C.F.R. § 1915.1(d) (1979).

ant to such policy of insurance, Hartford Accident and Indemnity Company paid to or on behalf of Richard Hill, compensation benefits and medical expenses totaling $44,724.46.[4] The parties entered into a stipulation which obligates the plaintiff to indemnity Hartford Accident and Indemnity Company for monies already paid to him.

The court finds that reasonable compensation for the plaintiff's injuries, pain, suffering, lost wages and medical expenses are as follows:

| | |
|---|---:|
| Pain and Suffering in the Past | 20,000.00 |
| Pain and Suffering in the Future | 25,000.00 |
| Lost Wages | 5,000.00 |
| Lost Earnings in the Future | 100,000.00 |
| Past Medical Expenses | 5,412.14 |
| Future Medical Expenses | 7,000.00 |
| Sub Total | 162,412.14 |
| Discount Attributed to Hill's Negligence—20% | 32,482.42 |
| Total Damages | $129,929.72 |

After indemnifying Hartford Accident and Indemnity Company plaintiff's recovery will be $85,205.26.

In awarding damages to Hill, the court has taken into consideration the fact that plaintiff's recovery for lost wages and lost earnings in the future are subject to income tax.

All costs of court should be taxed against Texaco, Inc.

The judgment in this case should bear interest at the rate of nine percent (9%) per annum, from and after _____, 1980.

In accordance with the findings of fact and conclusions of law set forth above, it is hereby ORDERED, ADJUDGED, and DECREED that plaintiff shall be, and the same is awarded $129,929.72 in damages, plus costs of the court.

---

4. It has come to the court's attention that at trial it erroneously stated the amount of indemnification as $44,726.46. In fact, the stipulated amount was $44,724.46. This final judgment is based on the proper amount, altering Hill's total recovery by $2.00.