**Simmie L. WALKER, Plaintiff-Appellee,**

v.

**The BLACKSEA STEAMSHIP COMPANY et al., Defendants,**

**Baltic Shipping Company, Defendant-Appellant.**

No. 79–1953.

United States Court of Appeals, Fifth Circuit.
Unit A

Feb. 2, 1981.

Rehearing and Rehearing En Banc Denied March 17, 1981.

Gustave A. Manthey, Jr., J. Dwight LeBlanc, Jr., New Orleans, La., for defendant-appellant.

Murray, Murray, Ellis, Braden & Landry, W. Glenn Burns, Stephen B. Murray, New Orleans, La., for plaintiff-appellee.

Before AINSWORTH, Circuit Judge, KUNZIG, Judge,* and RANDALL, Circuit Judge.

* Judge of the United States Court of Claims, sitting by designation.

AINSWORTH, Circuit Judge:

This is a maritime negligence suit brought by Simmie L. Walker against Baltic Shipping Company, owner of the M/V ATKARSK, to recover damages for physical injuries Walker sustained when he slipped and fell down a ladder of the M/V ATKARSK. At the time of his injury, Walker was working on the M/V AT-KARSK as a longshoreman winch operator, employed by J. P. Florio & Company, Inc., an independent stevedoring contractor hired by Baltic to load and unload cargo from the vessel. After a nonjury trial, the district judge found Walker's total damages to be $57,504.73, but that Walker was 60% contributorily negligent. The court accordingly reduced Walker's judgment to $23,-001.89. We affirm.

## I.

In the afternoon of September 3, 1974, Simmie Walker was assigned to take over the winch controls from the morning operator at the No. 3 hold of the M/V AT-KARSK. To get to the controls, Walker had to pass from the main deck to the higher, boat-deck level, where the controls were located. Walker accomplished this by ascending the ship's ladder on the starboard side of the vessel. The starboard ladder was a "stair-type" ladder resembling the steps still used on occasion by passengers to board commercial airplanes. The ladder was partially obstructed by a lashing wire strung across it from a point above and on the port side of it to a point below and to starboard of it. Walker stooped under the wire, proceeded up the ladder, and began his work at the winch controls. Approxi-

mately an hour and a half later, Walker stopped work to get a drink of water. The water container was on the main deck, so he walked back to the starboard ladder and started to descend it facing forward, or toward the stern of the vessel. As Walker approached the wire, he put his hand on it and stooped to pass under it. As he did so, he slipped on the ladder tread and fell down, injuring himself.

Walker reported the accident to his foreman but used the same ladder twice more, to return to work and when leaving for the day. Lashing wires are ordinarily used to fasten cargo, but according to the testimony of Baltic's expert witness, this wire was performing no such function (Supp.R. at 169; see District Court Finding of Fact No. 1). Defendant Baltic Shipping Company was responsible for the presence of the lashing cable (Supp.R. at 122, 129; see Finding of Fact No. 1). Walker did not notify his foreman of the obstructed ladder before starting work, nor did the foreman ask the ship's crew to remove the wire obstruction. There were alternate passageways and ladders from the main deck to the winch controls which Walker could have used to reach the controls.

## II.

In 1972, Congress amended the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–50, to increase workers' compensation benefits and to remove no-fault liability of vessels to workers based on the doctrines of "unseaworthiness" or "non-delegable duty." Under section 905(b)[1] vessels became liable

1. Section 905(b) provides:
   In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury

was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies

only for their own negligence.[2] In the legislative history to the 1972 amendments, Congress suggested that a uniform federal standard for determining vessels' negligence founded on land-based negligence concepts be developed.[3] However, the legislative history also discloses that certain land-based concepts, such as assumption of the risk and contributory negligence, "are not to be carried over into the federal law governing LHWCA suits."[4]

The leading case for this circuit in applying the foregoing principles is *Gay v. Ocean Transport & Trading, Ltd.*, 546 F.2d 1233 (5th Cir. 1976). In *Gay*, we held that the Restatement (Second) of Torts, particularly sections 342, 343 and 343A(1),[5] constitute the uniform federal standard to be applied in LHWCA cases.[6] In the second opinion of this court to apply the Restatement sections to LHWCA suits, *Brown v. Mitsubishi Shin-*

against the vessel except remedies available under this chapter.

2. In the House Report on the bill which proposed the amendment, the Committee stated:
   Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness.
   H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad.News, pp. 4698, 4703 [hereinafter cited as 1972 House Report].

3. According to the House Report:
   The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore . . . .
   
   . . . . .
   
   Finally, the Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law.
   1972 House Report at 4703 & 4705.

4. *Gay v. Ocean Transport & Trading, Ltd.*, 546 F.2d 1233, 1238 (5th Cir. 1976). The court in *Gay* reached its conclusion after reviewing the following language of the House Report:
   [T]he Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury. Also, the Committee intends that the admiralty rule which precludes the defense of "assumption of risk" in an action by an injured employee shall also be applicable.
   1972 House Report at 4705.

5. Restatement (Second) of Torts § 342 (1965) provides:
   A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
   (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
   (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
   (c) the licensees do not know or have reason to know of the condition and the risk involved.

   Section 343 states:
   A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
   (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
   (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
   (c) fails to exercise reasonable care to protect them against danger.

   Section 343A(1) continues:
   A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

6. *Gay, supra* at 1238. In adopting the Restatement standard, this court cited decisions in the Second and Fourth Circuits:
   *Anuszewski v. Dynamic Mariners Corp.*, 540 F.2d 757, 759 (4th Cir. 1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977) and *Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505, 509 (2d Cir. 1976).

*taku Ginko,* 550 F.2d 331 (5th Cir. 1977), we said:

Those sections impose a duty on a possessor of property to inform invitees (including employees asked to work on the property) of any dangerous condition present on the property that he knows or should reasonably know about; relieve the possessor of this duty if invitees should reasonably be expected to discover or realize the danger on their own; but reimpose a duty on the possessor to alleviate the danger if he should reasonably anticipate that invitees might be harmed despite their awareness of the danger.

550 F.2d at 333–34. After a careful review and balancing of the competing concerns embodied in the Restatement (Second) of Torts, Supreme Court and Fifth Circuit decisions, and the 1972 amendments to the LHWCA, we hold that under the particular facts of this case, the district court's apportionment of damages was the proper disposition of this case.

### A.

■ Baltic first contends that the wire across the ladder did not, in the words of section 343 of the Restatement, "involve [ ] an unreasonable risk of harm"; therefore, a prima facie case for plaintiff has not been established. However, in cases with analogous facts, courts have found that similar conditions present an unreasonable risk of harm. *See, e. g., Canizzo v. Farrell Lines, Inc.,* 579 F.2d 682 (2d Cir.), *cert. denied,* 439

U.S. 929, 99 S.Ct. 316, 50 L.Ed.2d 322 (1978) (grease and cables on deck); *Spaulding v. Parry Navigation Co.,* 187 F.2d 257 (2d Cir. 1951) (ladder improperly lashed to ship); *Leeds v. Sun-Ray Drug Co.,* 173 F.2d 666 (3d Cir. 1949) (grease on stairs of store); *Surface v. Safeway Stores,* 169 F.2d 937 (8th Cir. 1948) (water on floor).[7] Dean Prosser defines unreasonably dangerous conditions in a way which would include the circumstances here of a wire across a ladder.[8] The wire increased the probability that an accident would occur on the ladder. The seriousness or gravity of the potential accident was substantial.[9] Finally, the utility of the wire being placed as it was, was minimal; as we stated above, as far as we can discern from the record, the wire served no purpose. The placement of the wire thus created an unreasonable risk of harm.

### B.

Both parties agree that the danger was open and obvious and that Walker knew of its existence. Therefore, the crux of the dispute involves an interpretation of section 343A(1)'s imposition of liability on the owner if, in the words of the subsection, it "should anticipate the harm despite such knowledge or obviousness."

Baltic argues that it could not anticipate the harm to Walker because it can only anticipate reasonable acts of longshoremen on its vessel, and Walker acted unreasonably in encountering an open and obvious danger. However, as the comments to sec-

---

**7.** Pre-1965 cases, of course, construe the original Restatement of Torts § 343, but for purposes relevant here, the standard has remained the same. *Compare* Restatement of Torts § 343(a) (1938) ("unreasonable risk") *with* Restatement (Second) of Torts § 343(a) (1965) ("unreasonable risk of harm").

In *Stockstill v. Gypsum Transportation,* 607 F.2d 1112 (5th Cir. 1979), this court applying section 343A(1) denied recovery to a longshoreman who slipped from a greasy ladder, but we analyzed the facts after recognizing that they presented a "dangerous condition." *Id.* at 1116.

**8.** *See* W. Prosser, The Law of Torts § 31 (4th ed. 1971):

Negligence already has been defined as conduct which falls below a standard estab-

lished by the law for the protection of others against unreasonable risk of harm. The idea of risk necessarily involves a recognizable danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may follow.

*Id.* at 146 (footnotes omitted).

As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less. Against this probability, and gravity, of the risk, must be balanced in every case the utility of the type of conduct in question.

*Id.* at 147–48 (footnote omitted).

**9.** Walker was unable to work from September 4, 1974 to August 8, 1975 because of his injuries.

tion 343A point out, there are numerous reasons to expect harm to the visitor despite the obviousness of the danger. Illustrations explain that the visitor might have his attention distracted, he might have forgotten about the danger, or he might believe the benefit of encountering the danger outweighs the risk. Restatement (Second) of Torts, § 343A, Comment f and Illustrations 2–5 (1965). We hold that Baltic *could* have foreseen the harm to Walker; we now consider whether, under the law of this circuit, Baltic *should* have anticipated the harm and whether Baltic will therefore be held liable for Walker's injuries.

Since our decision in *Gay v. Ocean Transport & Trading, Ltd.*, this circuit has stated that recovery by longshoremen for personal injuries upon encountering open and obvious dangers should normally be limited to cases where the danger "*must* be faced notwithstanding knowledge." 546 F.2d 1233, 1242 (5th Cir. 1976) (emphasis added).[10] *See, e. g., Brown v. Mitsubishi Shintaku Ginko*, 550 F.2d 331, 334 (5th Cir. 1977) (recovery if danger "must be faced"); *Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030, 1036, *cert. denied*, 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978) and *Stockstill v. Gypsum Transportation*, 607 F.2d 1112, 1117 (5th Cir. 1979) (recovery if

invitees "could not appreciate or could not avoid" danger). The parties agree that alternate routes to the winch controls were available to Walker. However, under the facts of this case, the availability of an alternate route does not end our inquiry.

Beginning with *Brown, supra*, the same cases that considered the "avoidability" of the danger also introduced "control" of the work area as an element to aid the court in deciding these cases. When the accident occurs in an area controlled by the stevedore—the longshoreman's employer—or in an area controlled by the longshoreman himself, recovery will be denied. *See Brown, supra* at 334 (longshoreman controlled the condition, recovery denied); *Hess, supra* at 1036 (condition created by stevedore's employees, recovery denied); *Stockstill, supra* at 1117 (danger under control of stevedore's employees, recovery denied). In the instant case, the ladder was not in an area controlled by the stevedore or the longshoreman.[11] Thus, one of the elements weighing heavily against recovery is absent.

In passing the 1972 amendments, Congress indicated that by removing vessel's absolute liability for unseaworthiness the amendments would promote safety aboard ship,[12] since placing primary liability on

---

**10.** *Gay* cited the Second Circuit's interpretation of section 343A in *Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505, 508–09 (2d Cir. 1976):

> Although the invitee (or in this case the employee) may be under a duty to avoid harm likely to result to him from open and obvious dangers, he may not be in a position fully to appreciate the risk or to avoid the danger even though aware of it.

> . . . . .

> [A] vessel is liable to longshoremen only for injuries resulting from obvious dangers which it should reasonably anticipate that the longshoremen would be unable to avoid.

**11.** In this regard the district court held that the stevedore did not control the area around the ladder or the lashing cables. The court found:

> In addition, there was evidence that the stevedore on this particular contract did no lashing at all. Defendant's witness testified that under the arrangement with the ship owner, the crew performed the cargo lashing and unlashing.

Finding of Fact No. 1. Since the question of control is essentially one of fact, the judge's finding will stand as not clearly erroneous. Baltic's expert witness testified that a stevedoring firm assumes control "for the hatches they are working," not for the entire ship. Supp.R. at 174. The record shows that J. P. Florio was "working" hatches 2 and 3 on the date involved, *id.* at 175, but that the obstructed ladder was near hatch 4.

Longshoreman Walker did not assume control of the ladder or the wire merely by the act of coming in contact with them. Baltic's expert stated that despite Walker's lack of control, "if he saw an unsafe condition, he could have it corrected." *Id.* at 175. Apparently the trial judge took this into account in determining Walker's contributory negligence.

**12.** Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work.

1972 House Report at 4704.

stevedores for longshoremen's injuries would encourage the persons best able to prevent accidents to make work areas safer. *See Lubrano v. Royal Netherlands Steamship Co.*, 572 F.2d 364, 370–71 (2d Cir. 1978). The Restatement (Second) of Torts, itself, does not state that the danger must be unavoidable in order for the plaintiff to recover.[13] However, the Fifth Circuit has determined that in weighing the many elements arguing for or against recovery, at least when the condition is controlled by the stevedore or the longshoreman himself, the obvious danger must be unavoidable before longshoremen's suits against the vessel will be successful. Such a balancing is consistent with the Supreme Court's admonition that "liability shall fall upon the party best situated to adopt preventative measures and thereby to reduce the likelihood of injury." *Italia Societa Per Azioni De Navigazione v. Oregon Stevedore Co.*, 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964).

Where the dangerous condition is located in an area of the ship not under the control of the stevedore or longshoreman, a balancing of competing interests must be made. In passing the 1972 amendments, Congress specifically stated that "nothing in this bill is intended to derogate from the vessel's responsibility to take ,appropriate corrective action where it knows or should have known about a dangerous condition." 1972 House Report at 4704. Moreover, "the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury." *Id.* at 4705. Thus, when determining which party is "best situated" to prevent the accident becomes more problematical, the basic admiralty concept of apportioning damages carries more weight. Here, it is difficult for us to say that Walker and his stevedore were better situated to prevent the accident by stopping work until the wire was removed or by using an alternative route than was the shipowner by never stringing the wire across the ladder in the first place.

In the Second Circuit's case of *Canizzo v. Farrell Lines, Inc.*, 579 F.2d 682 (2d Cir.), *cert. denied*, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978), a longshoreman was moving to his new work area and walked through a passageway where he slipped on some grease obscured by wires on the deck. The district court applied section 343A, yet still held the shipowner liable. The trial court held, however, "that Canizzo had been contributorily negligent in failing to walk with sufficient caution, or alternatively, in failing to avoid the wires by taking a different route," and reduced his recovery 40%. *Id.* at 684. In upholding recovery the Second Circuit said:

> Too strict a view of a shipowner's liability in these situations would do much to diminish the salutary effects of the 1972 amendments by, in effect, making shipowners liable, once again, on what is akin to an unseaworthiness standard, but without recourse to contribution on the part of a negligent stevedore. Too lax a view would specifically contradict the congressional intention to make shipowners liable for their own negligence under the amended statute.[14]

13. Comment (f), Illustration 5 to section 343A, is most closely analogous to the instant case. Although the illustration gives an example of an unavoidable danger, several of the thirteen cases on which the illustration is based, *see* Restatement (Second) of Torts, Appendix, Reporter's Notes § 343A, are not unavoidable danger situations. *See Surface v. Safeway Stores*, 169 F.2d 937, 940 (8th Cir. 1948) ("It is true that voluntary exposure to an obvious danger which reasonably can be avoided will ordinarily constitute contributory negligence" to bar recovery. But recovery allowed under facts of the case.); *Reboni v. Case Brothers,*

*Inc.*, 137 Conn. 501, 78 A.2d 887 (1951); *Mayzlik v. Lansing Elevator Co.*, 241 Minn. 468, 63 N.W.2d 380, 386 (1954) ("he cannot be declared guilty of contributory negligence merely because it is now apparent in the light of results and subsequent events that he might have avoided the accident.")

14. *But see id.* at 686 n.3; *Cox v. Flota Merchante Grancolombiana, S.A.*, 577 F.2d 798 (2d Cir.), *cert. denied*, 439 U.S. 881, 99 S.Ct. 222, 58 L.Ed.2d 195 (1978); *Frasca v. Prudential-Grace Lines, Inc.*, 394 F.Supp. 1092 (D.Md.1975). Although *Cox* and *Frasca* present factual situations similar to the instant case, they differ in

579 F.2d at 685. Striking the balance in favor of apportioned damages under similar circumstances here, where the dangerous condition is not under the control of the stevedore or longshoreman, is in our view the proper solution to this issue.

### C.

█ Baltic's final argument is that any negligence besides Walker's was attributable to J. P. Florio, the stevedore, and not to Baltic. However, we agree with the district judge's Conclusion of Law No. 2: "The defendant was negligent in creating the hazardous condition and failing to remedy the situation by removing the cable." (R. at 439) Once Baltic's negligence is established, whether the stevedore was also negligent is irrelevant to the issue of Walker's recovery against Baltic. The district judge correctly stated in his Conclusion of Law No. 3 that "the negligence of the stevedore company will not insulate a negligent shipowner from liability. *Samuels v. Empress Lineas Maritimas Argentinas,* 573 F.2d 884 [, 888] (5th Cir. 1978)." The Supreme Court has recently held that despite the "awkward wording" of the first two sentences of 33 U.S.C. § 905(b),[15] they do not change the "pre-existing rule that a longshoreman who is injured by the concurrent negligence of the stevedore and the ship may recover for the entire amount of his injuries from the ship." *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 266, 99 S.Ct. 2753, 2760, 61 L.Ed.2d 521 (1979).

### III.

We have considered all of Baltic's contentions with respect to the district court's findings of fact but hold that these findings are not clearly erroneous. We therefore affirm the award made by the trial court in favor of plaintiff Walker.

AFFIRMED.

one important respect since the stevedores had control of the dangerous conditions. *Cox,* 577 F.2d at 802; *Frasca,* 394 F.Supp. at 1099. The difference between the instant case and *Frasca* is apparent. In *Frasca,* the longshoremen were assigned to unload the No. 4 hatch and Mr. Frasca slipped on the No. 4 hatch's slippery

ladder. Recovery was denied. Here, Walker's gang was assigned to unload hatch No. 3 and Walker slipped on a ladder near the No. 4 hatch.

15. *See* note 1 *supra.*