**Frank E. FRASCA**

v.

**PRUDENTIAL-GRACE LINES, INC.**

**Civ. No. B-74-272.**

United States District Court,
D. Maryland,
Baltimore Division.
April 30, 1975.

Fred Ginsberg and Eugene A. Edgett, Jr., Baltimore, Md., for plaintiff.

Randall C. Coleman, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

### I. *Facts*

This is a maritime "slip'n fall" case arising under the provisions of the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 905(b) (Pocket Pt. 1974). The plaintiff, a longshoreman, was injured when he slipped and fell off a ladder leading into the No. 4 hatch on the defendant's ship, the S.S. SANTA CLARA. The jury returned a special verdict finding the shipowner, the plaintiff's stevedoring employer, I.T.O. Corp., and the plaintiff all negligent in the amounts of 40 percent, 50 percent, and 10 percent respectively. Total damages were found to be $21,000. This court accordingly entered judgment in favor of plaintiff in the amount of $8,400, or 40 percent of $21,000. The shipowner timely moved for a judgment notwithstanding the verdict under Fed.R.Civ.P. 50(b), having made a motion for a directed verdict at the close of all the evidence. The defendant does not seek a new trial. In its motion, the defendant challenges the sufficiency of the evidence to show a breach of the defendant's duty to the plaintiff under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 905 (Pocket Pt. 1974).

The standard for granting a judgment notwithstanding the verdict is the same as the standard for directing a verdict, and the motion for judgment n.o.v. can be granted only if the motion for directed verdict should have been granted. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2537, at 599 (1971) [hereinafter cited as Wright & Miller]. Hence, in determining whether the evidence is sufficient to create an issue of fact for the jury,

> the court is not free to weigh the evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury. Instead it must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence.

*Id.* § 2524, at 543–45. Thus, the motion for a judgment n.o.v. should be denied

> if, giving [the plaintiff] the benefit of every legitimate inference in his favor, there was evidence upon which the jury could reasonably return a verdict for him . . . .

Mays v. Pioneer Lumber Corp., 502 F.2d 106, 107 (4th Cir. 1974); see Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). The movant is not entitled to prevail if, based on the applicable law, the evidence raises questions upon which reasonable minds may differ. *See* Harner v. John McShain, Inc. of Md., 394 F.2d 480, 481 (4th Cir. 1968); 9 Wright & Miller § 2528, at 564. The evidence as construed most favorable to the plaintiff is as follows:

The accident occurred on May 29, 1973, a cloudy, overcast day, with an on-and-off drizzle. The longshoremen crew of which plaintiff was a member reported to work at 8:00 a. m. to finish unloading No. 4 hatch on the S.S. SANTA CLARA, which they had begun unloading the day before. They had quit work at noon the previous day due to inclement weather.

The No. 4 hatch opening had four covers, of which the port side forward cover was open on the morning of May 29. On top of the closed covers were various large containers or crates lashed

to the deck. Surrounding the hatch is a "coaming," which is 12–18 inches wide extending upward from the deck about three feet. The hatch's port ladder is attached to the inside of the coaming equidistant from either end of No. 4 hatch; the ladder extends down to the upper 'tween deck. The top rung of the ladder is about 12 inches below the top of the coaming. The rungs are 18 inches wide, but the closed after hatch cover extended over part of the top rung, and hence only nine inches of the top rung were visible and available for use.

To descend into the hatch using this ladder, a person had to swing one foot over the coaming and feel for the top rung, while holding on to the deck lashing with one hand and the hatch coaming with the other. The other foot would then be swung over the coaming and placed on the ladder. Thus, the lashing wires provided the only firm hand hold.

When the members of plaintiff's gang descended into the lower hold on the morning of May 29, they noticed that the lashing wires, the coaming, and the ladder were all covered with a fine film of oil or grease. There was also water and grease on the surface of the lower hold deck. Because of the latter condition, the longshoremen requested and were provided with "Stay-Dry," which is a substance that will absorb water and oil or grease and provide traction for the "hi-lo" tractor used by the longshoremen to move cargo inside the hatch. The longshoremen also noticed a tipped-over "hi-lo" tractor on the upper 'tween deck, from which oil or hydraulic fluid was leaking. This fact was called to the attention of the stevedore's foreman, and a mate was called in order to point out the tractor's condition to him.

The general greasy condition of the lashing wires, hatch coaming, and ladder was not directly called to the attention of the ship's personnel by any of the longshoremen. However, a member of the ship's crew did descend into the hold by way of the port hatch ladder to open the lower hatch when the longshoremen first descended in the morning. A ship's crew member also descended into the hatch to close the upper 'tween deck lid at about 1:00 p. m. Neither the ship's crew nor the stevedoring company or its employees made any attempts to correct the oily and greasy conditions on the lashing wires, hatch coaming, and ladder.

The factual cause of the greasy conditions in the area was not certain. The condition could have been caused by ship's crew or longshoremen previously tracking the oil from the upper 'tween deck onto the ladder, coaming, and lashing wires, and/or from the presence of grease in the grooves of the hatch cover rollers on the top of the coaming. The greasy conditions were present when the longshoremen reported for work that morning. The condition became worse throughout the day due to the tracking of oil by the longshoremen as they went up and down the ladder.

From 8:00 a. m. until the time of plaintiff's fall shortly after 3:00 p. m., eight longshoremen used the ladder at least three times each. The plaintiff himself used the ladder four times. He admitted that he noticed the greasy and oily conditions when he first descended in the morning and remained aware of the condition until the time of his injury. Another ladder, known as the "escape hatch" ladder, was available for use in the after end of No. 4 hatch. After 1:00 p. m. on May 29, however, this ladder became more difficult to use because the longshoremen would have had to climb over two large air conditioners that had been stowed in the after end of the upper 'tween deck in No. 4 hatch. None of the longshoremen used the escape hatch ladder, as their usual practice was to use the ladder leading directly into the hatch. The plaintiff was not instructed to use the escape hatch ladder rather than the port hatch ladder.

Shortly after 3:00 p. m. on May 29, the plaintiff ascended the ladder to get some coffee and use the restroom. He

returned to No. 4 hatch, and, while attempting to swing his right foot over the coaming and descend the ladder, his left foot slipped off the top rung of the ladder, causing his hands to slip from the lashing wire and coaming. The plaintiff fell approximately 15 feet to the upper 'tween deck and suffered severe injuries. The question presented is whether these facts constitute sufficient evidence from which a reasonable jury could find that the defendant shipowner breached any duty that it owed to the plaintiff longshoreman.

## II. *The Shipowner's Duty*

Before the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, a longshoreman could recover against a shipowner for injury suffered during the course of his employment on board ship under either or both of two distinct theories: the doctrines of seaworthiness and negligence. Under the former, the shipowner's liability was in the nature of strict liability: he had an absolute, continuing duty to provide the longshoreman with a reasonably safe place to work. *See* Provenza v. American Export Lines, Inc., 324 F.2d 660, 662–63 (4th Cir. 1963); Ramirez v. Toko Kaiun K.K., 385 F.Supp. 644, 648–49 (N.D.Cal.1974). However, the 1972 Amendments have eliminated unseaworthiness as a remedy for longshoremen injured on a vessel; only the longshoreman's action in negligence has been retained. 33 U.S.C.A. § 905(b) (Pocket Pt. 1974).

■■ The legislative history of the 1972 amendments makes clear that

> land-based principles of law apply to longshoremen's claims for damages against third parties and that a ship has no different liability to longshoremen employed to work aboard it by a stevedoring company than the owner of land-based property owes to the employees of an independent contractor who performs work on that property.

Anuszewski v. Dynamic Mariners Corp. Panama, Civil No. 73–1200–K, 391 F. Supp. 1143 at 1146 (D.Md.1975); Ramirez v. Toko Kaiun K.K., 385 F. Supp. 644, 651 (N.D.Cal.1974); *see* H.R.Rep.No. 1441, 92d Cong. 2d Sess. (1972), in [1972] 3 U.S.Code Cong. & Admin.News, p. 4698. In determining this land-based duty, the federal courts must develop and apply a uniform federal law. Anuszewski v. Dynamic Mariners Corp. Panama, *supra* at 1147; Hite v. Maritime Overseas Corp., 380 F.Supp. 222, 226 (E.D.Tex.1974).

■■ The stevedoring company that unloaded the S.S. SANTA CLARA in this case was an independent contractor. Under principles of land-based law, employees of independent contractors are "invitees" while performing work on the premises of an owner of land. Anuszewski v. Dynamic Mariners Corp. Panama, *supra* at 1147; W. Prosser, Handbook on the Law of Torts, § 61, at 385–86 (4th ed. 1971) [hereinafter cited as Prosser]. Hence, the plaintiff in this case was an invitee while he performed his work on the S.S. SANTA CLARA.

■ The land-based owner is not an insurer of the safety of his invitees, his duty extending only to exercise reasonable care for their protection. Prosser § 61, at 392. The owner must warn the invitee of latent dangers of which he knows or should know, "and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use" of the premises. *Id.* at 393. The Restatement (Second) of Torts provides the following formulation as to the landowner's liability:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965).

 This land-based liability must be distinguished from the liability of the landowner for the negligence of independent contractors that he hires to perform work on the premises. In general but subject to many exceptions,[1] the owner is not liable for the negligence of an independent contractor in creating a dangerous condition during the performance of the work at a time when the contractor has exclusive control over the manner and area of the work. *See* Hite v. Maritime Overseas Corp., 380 F.Supp. 222, 227 n. 10 (E.D.Tex.1974); Prosser § 71, at 468–70; Restatement (Second) of Torts § 409 (1965). *See also id.* § 422, comment *c*, at 405 (1965). Thus, in this case, if the active negligence of the longshoremen or some third party had caused the greasy condition while the stevedoring company had exclusive control over No. 4 hatch, the owner could not be held liable for the plaintiff's resulting injury, at least absent notice of the condition to the ship's crew. *See* Price v. SS Yaracuy, 378 F.2d 156, 161 (5th Cir. 1967); Albanese v. N.V. Nederl Amerik Stoomv. Maats., 346 F.2d 481, 483 (2d Cir.), rev'd on other grounds, 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965); Slaughter v. S.S. RONDE, Civil No. 3151, 390 F.Supp. 637 at 640, 644 (S.D. Ga.1974); Prosser § 71, at 469–70; Restatement (Second) of Torts § 426, comment *b*, at 414 (1965). Under the pre-1972 doctrine of seaworthiness, however, the shipowner would have been liable, regardless of the cause of the condition, under its continuing non-delegable duty to provide a reasonably safe place for the longshoremen to work, which duty extended to dangerous conditions arising during the performance of the stevedoring work. *See* Crumady v. The J.H. Fisser, 358 U.S. 423, 427, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). Under the new law, it is primarily the duty of the stevedoring company to correct such defects. Lucas v. "Brinknes" Schiffahrts Ges., 379 F.Supp. 759, 769 (E.D.Pa.1974); *see* Fedison v. Vessel Wislica, 382 F. Supp. 4, 8 (E.D.La.1974). Thus, the 1972 amendments eliminate the absolute, non-delegable duty to provide a reasonably safe place to work.

 However, some courts may have confused the elimination of this absolute duty with the owner's duty under land-based principles to exercise *reasonable care* to provide employees of independent contractors initially with a reasonably safe place to work. *See, e. g.*, Fedison v. Vessel Wislica, 382 F.Supp. 4, 6 (E.D.La.1974). *See also*, Ramirez v. Toko Kaiun K.K., 385 F.Supp. 644, 653 (N.D.Cal.1974). Imposition of a similar duty upon shipowners is in accord with the intent of Congress in passing the 1972 amendments, H.R.Rep.No.1441, 92d Cong. 2d Sess., in [1972] 3 U.S.Code Cong. & Admin.News, pp. 4698, 4704, for the duty is encompassed within the land-based owner's general duty to exercise reasonable care to make the premises reasonably safe for the entrance of his invitees. Ramirez v. Toko Kaiun K.K., 385 F.Supp. 644, 651 (N.D.Cal. 1974); see West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959) (holding, however, that a shipowner owes no duty where the employee is injured by the very defect that the independent contractor was hired to repair when the shipowner had no control over the repairs); Sullivan v. Shell Oil Co., 234 F.2d 733, 738 (9th Cir.), cert. denied, 352 U.S. 925, 77 S.Ct. 221, 1 L.Ed.2d 160 (1956); Womble v. J. C. Penney Co., 431 F.2d 985, 988 (6th Cir. 1970); Warren v. Hudson Pulp & Paper Corp., 477 F.2d 229, 233 (2d Cir. 1973). The duty is not absolute, but is one of

---

1. See Restatement (Second) of Torts §§ 409–429 (1965).

exercising reasonable care under the circumstances. It is a "nondelegable" duty in the sense that an owner will nevertheless be liable for the negligence of an independent contractor who is hired to *repair or remedy* the condition. Prosser § 71, at 470–71; *see* Restatement (Second) of Torts § 425 (1965). But it is not "nondelegable" as that term has been traditionally used in admiralty law to describe the absolute duty imposed by the doctrine of seaworthiness under which the shipowner could be held liable even for dangerous conditions arising from the details of the contractor's work methods in the work area after the owner had relinquished exclusive control over such matters to the stevedoring company. *Compare* Crumady v. The J. H. Fisser, 358 U.S. 423, 427, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). On the contrary, the land-based law imposes no such liability. Restatement (Second) of Torts § 426 (1965); *see*, Womble v. J. C. Penney Co., 431 F.2d 985, 988 (6th Cir. 1970). This is true because, once the manner and area of work is turned over to the exclusive control of the independent contractor (stevedore), the shipowner, like the landowner, has no duty to supervise the details of the independent contractor's methods of operation to see if any dangerous conditions have arisen therefrom. Slaughter v. S.S. RONDE, Civil No. 3151, 390 F.Supp. at 640, 644 (S.D.Ga.1974); Ramirez v. Toko Kaiun K.K., 385 F.Supp. 644, 652 (N.D. Cal.1974); Fedison v. Vessel Wislica, 382 F.Supp. 4, 7 (E.D.La.1974); see Restatement (Second) of Torts § 426, comment *a*, at 414 (1965). Thus the shipowner

cannot be liable for injuries caused by his failure to inspect and discover dangerous conditions arising in the work area from the methods of the unloading operations, unless the owner had actual or constructive knowledge of the condition obtained by independent means.[2] Price v. SS Yaracuy, 378 F.2d 156, 161 (5th Cir. 1967); Ferrante v. Swedish Am. Lines, 331 F.2d 571, 575 (3d Cir. 1964); Slaughter v. S.S. RONDE, *supra* at 640, 644–45; *see* Prosser § 71, at 469–70. Absent such knowledge by the owner, the land-based duty imposes liability solely upon the independent contractor if it is found negligent for creating such conditions and permitting them to continue.

 In sum, the shipowner in this case owed the same duty to the plaintiff longshoreman as a landowner owes to an employee of an independent contractor. That duty is to exercise due care to turn the work area over to the control of the stevedoring company in a reasonably safe condition and to take reasonable precautions once he has actual or constructive knowledge of dangers arising thereafter.[3] Upon the evidence presented, a reasonable jury could find that the greasy and oily conditions existed when the longshoremen were given control of the work area. Further, from evidence that a member of the ship's crew twice descended into the hatch by means of the ladder on May 29, the jury could find that the shipowner knew or should have known of the condition early that morning[4] and, from the nature of the condition itself, that it involved an unreasonable risk of harm to the long-

2. Congress specifically intended that the amendments do not "derogate the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition." H.R.Rep.No. 1441, 92d Cong.2d Sess., in [1972] 3 U.S. Code Cong. & Admin.News, pp. 4698, 4704; Slaughter v. S.S. RONDE, *supra* at 640, 644–45.

3. It should again be emphasized that the shipowner cannot be charged with constructive knowledge for his negligent failure to inspect and discover dangerous conditions arising after exclusive control over the work has been relinquished to the stevedoring company. Slaughter v. S.S. RONDE, *supra* at 644.

4. Actual or constructive knowledge of the condition by the owner's employee may be imputed to the owner. 65 C.J.S. Negligence § 63(54), at 775–76 (1966); *see* Price v. SS Yaracuy, 378 F.2d 156, 161–62 (5th Cir. 1967).

shoremen if not corrected. *See* Restatement (Second) of Torts § 343(a) (1965). However, the only reasonable conclusion that could be drawn from other evidence presented is that the danger was open and obvious and, in fact, known to the plaintiff, for he admitted that he discovered the conditions when he first descended into the hatch at 8:00 a. m. on the morning of May 29. Hence, the question remaining is whether, under the circumstances, the shipowner's duty extended to the obligation to remedy existing dangerous conditions that are open and obvious or known to the longshoremen. Again, land-based principles of premises liability law apply.

The traditional view of the duty of the landowner with respect to known or open and obvious conditions absolves the landowner from liability ipso facto once it was shown that the danger was obvious or that the invitee knew of the condition and realized the danger. Restatement of Torts § 343(C)(iii) (1934); Anno., 35 A.L.R.3d 230, 244–53 (1971), and cases cited therein. Some recent cases under the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act have followed this rule, at least in dictum. *See* Ramirez v. Toko Kaiun K.K., 385 F.Supp. 644, 651 (N.D.Cal.1974) (dictum); Fedison v. Vessel Wislica, 382 F.Supp. 4, 7–8 (E.D. La.1974); Hite v. Maritime Overseas Corp., 380 F.Supp. 222, 226 (E.D.Tex. 1974).

This restrictive view of the landowner's duty has eroded in many states with the passage of time. The so-called "modern" view of the owner's duty is that the obviousness or knowledge of the danger by the plaintiff does not necessarily relieve the owner of its obligation to take further precautions to remedy the danger; a mere warning may not suffice. Anno., 35 A.L.R.3d 230, 236, 254–62 (1971); 2 F. Harper & F. James, The Law of Torts, § 27.13, at 1489–98 (1956); Prosser § 61, at 394–95. This approach has been adopted by the Second Restatement and by at least one court under

the 1972 amendments. *See* Anuszewski v. Dynamic Mariners Corp. Panama, Civil No. 73–1220–K, at 1147, 1148 (D.Md. 1975) (slip opinion). The Restatement's formulation of the rule is as follows:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A (1) (1965). The scope of this duty has been well summarized by Dean Prosser:

> . . . [I]n the usual case, there is no obligation to protect the invitee against dangers which are known to him or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. It is for this reason that it is so frequently held that reasonable care requires nothing more than a warning of the danger. But this is certainly not a fixed rule, and all of the circumstances must be taken into account. In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where . . . the condition is one such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, and, because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it. In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough.

Prosser § 61, at 394–95; *accord,* Restatement (Second) of Torts § 343A, comments *e, f,* at 219–20 (1965). In such cases, of course, the fact that the condi-

tion is known or obvious is still important in determining the issue of the plaintiff's contributory or comparative negligence. Restatement (Second) of Torts § 343A, comment *f*, at 220 (1965). "It is not, however, conclusive in determining the duty of the [owner], or whether he has acted reasonably under the circumstances." *Id.*

In summary, under the modern view, the landowner will be liable to his invitees for his failure to exercise reasonable care to protect them against a dangerous condition on the land if:

(1) The owner knows of the condition or should know of it in the exercise of reasonable care; *and*

(2) The owner should realize that the condition involves an unreasonable risk of harm to invitees; *and*

(3) The owner (a) should expect that an invitee will not discover or realize the danger, *or*

(b) if the danger is known or obvious to the invitees, should expect that they will not protect themselves against it or should otherwise anticipate the harm despite such knowledge or obviousness. Restatement (Second) of Torts §§ 343, 343A (1965).

This court hereby adopts the modern view as the correct statement of land-based law for purposes of ascertaining the shipowner's duty to invitees under the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 905(b) (Pocket Pt. 1974). Given such a duty, could a reasonable jury, based upon the evidence presented, conclude that the shipowner in this case breached the duty?

### III. *Defendant's Breach of Duty*

The court has already noted that the evidence created a jury question as to the first two elements outlined above. The court has also found that no reasonable minds could differ as to the obvious-ness of the condition and the plaintiff's actual knowledge thereof. Further, there is no evidence that the ship's crew made any effort to alleviate the greasy and oily conditions in and surrounding No. 4 hatch. Thus, the narrow question is whether a reasonable jury could find that the owner should have expected that the stevedore would not correct and the longshoremen would not protect themselves against the known danger or that the owner should have otherwise anticipated the harm despite such knowledge. Otherwise stated, was it reasonably foreseeable to a reasonably prudent man in the shoes of the shipowner that, once the longshoremen discovered the danger, neither the plaintiff, his fellow employees, nor the stevedoring company, which also had a duty to remedy dangerous conditions, would have taken any steps to remedy the situation over the seven-hour work period prior to the injury, and if so, was it reasonably foreseeable that the longshoremen would nevertheless continue to work in the area without using the alternate route available or insisting that the ship take remedial measures to make the condition safe? If it was so foreseeable, then a reasonable jury could find that, by taking no corrective measures, the shipowner breached his duty[5] of reasonable care to guard against the foreseeable risks. Such questions of foreseeability are, of course, generally for the jury to decide, unless reasonable minds could not differ. Prosser § 43, at 267, 270.

Clearly, if the accident had occurred in the early morning upon the first descent down the hatch, a jury could find the shipowner liable. It is entirely foreseeable that the stevedoring company would not have had sufficient time or even would have neglected to perform its duty at that point, even once the condition was discovered. Simply stated, it was reasonably foreseeable to the shipowner that the longshoremen would encounter a dangerous condition on the morning of May 29 notwithstanding its

---

5. *See* Prosser § 42, at 244–45, 250–51; *id.* § 44, at 274.

# 1102

obviousness or their knowledge of it—at least a jury would be permitted to so find. And even if the longshoremen were negligent in doing so, it would not necessarily be dispositive of the question of the shipowner's duty and breach thereof. Restatement (Second) of Torts § 343A, comment *f*, at 220 (1965).

This court concludes that reasonable minds could not differ concerning the unforeseeability that, even though the condition became worse during the day, the longshoremen would nevertheless continue to go in and out of the hold on at least 25–30 separate occasions without even protecting themselves by merely wiping the oil from the rungs of the ladder or by the use of the safer, alternate route, and that for at least seven hours, the stevedoring company would totally fail to perform its own duty to its employees under the Safety and Health Regulations to remedy the unsafe conditions in the work area.[6] The only reasonable conclusion to be drawn from the evidence is that, if any negligence was the cause of the plaintiff's injury, it was solely that of the stevedoring company and the plaintiff himself. In short, based on the evidence presented, and giving the plaintiff the benefit of every reasonable inference to be drawn therefrom, the shipowner had no reason to expect that the stevedore and longshoremen would fail to protect the plaintiff against a danger which they knew existed, which is frequently encountered in the type of work, and which could be so easily avoided. Stated otherwise, the shipowner had no reason to anticipate harm despite the longshoremen's actual knowledge of the condition. To hold a shipowner liable under the particular facts of this case would make the shipowner an insurer of the safety of longshoremen working on the vessel, since liability would be imposed for injuries that even the most prudent shipowner could not

reasonably anticipate—injuries caused by obvious and easily avoidable dangers of which the plaintiff was long aware. Such a result would judicially revive the longshoremen's remedy for unseaworthiness, the very remedy that Congress repudiated through the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act. Thus, the court concludes as a matter of law that the shipowner breached no duty that it owed to the plaintiff. Hence, the defendant's motion for a judgment n.o.v. will be granted.

---

6. There was absolutely no evidence that the stevedoring company was, or had a reputation of being, a less than competent independent contractor so as to put the defendant on notice that it might fail to perform its duty to its employees.