**Edith ZAWISTOSKI, Appellant–Plaintiff,**

v.

**GENE B. GLICK COMPANY, INC., Individually, Gene B. Glick Company, Inc. d/b/a Gene Glick Management Corporation, and Gene B. Glick Company, Inc. a/k/a and d/b/a Cambridge Square of Bloomington, LLC, and a/k/a Cambridge Square Apartments, as the Landlord Identified in the Lease, Appellees–Defendants.**

No. 53A05–0001–CV–26.

Court of Appeals of Indiana.

May 5, 2000.

William C. Lloyd, Matthew C. Boulton, Bill Lloyd & Associates, Bloomington, Indiana, Attorneys for Appellant.

Julia Blackwell Gelinas, Eric A. Riegner, Dionne Carroll McCoy, Locke Reynolds LLP, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

Edith Zawistoski appeals from the grant of partial summary judgment in favor of Gene B. Glick Company, Inc. and Cambridge Square of Bloomington, LLC ("Glick"), raising the following issue for review:

> Whether the trial court erred in finding that there was no genuine issue of material fact with regard to whether the residential lease entered into by the parties created a warranty on the part of the landlord to keep the common areas safe for the residents.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1991, Zawistoski and Glick entered into a lease of an apartment in the Cambridge Square apartment complex in Bloomington, Indiana. Glick advertised Cambridge Square as designed for individuals over the age of sixty-two and accessible for those with disabilities or limited mobility.

On October 22, 1997, Zawistoski tripped on a portion of raised sidewalk in the common area of the complex and sustained a fractured neck. She instituted this suit against Glick, alleging common law negligence and breach of contract. She later amended her complaint, adding a count for breach of warranty. Glick moved for summary judgment on the breach of warranty/breach of contract claims.

After a hearing, the trial court granted Glick's motion, finding that the lease did not create an express warranty that Glick would ensure the common areas were in a safe condition. Glick subsequently prevailed at the trial of the negligence claim. Zawistoski now appeals the grant of partial summary judgment in favor of Glick on her breach of warranty/breach of contract claims.

## DISCUSSION AND DECISION

Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Schrum v. Moskaluk,* 655 N.E.2d 561, 563–64 (Ind.Ct.App.1995), *trans. denied* (1996).

When reviewing a motion for summary judgment, this court applies the same standard utilized by the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933 (Ind.Ct.App.1996). We will affirm a trial court's grant of summary judgment if it is sustainable on any theory found in the evidence designated to the trial court. *Id.*

Zawistoski alleges that the trial court erred in finding no genuine issue of material fact with regard to whether the lease between her and Glick created an express warranty by Glick to keep the common areas of Cambridge Square Apartments safe. At issue is the interpretation of the lease. As a general rule, the construction or legal effect of a contract is a question of law to be determined by the court. *R.R.S. II Enters., Inc. v. Regency Assocs.,* 646 N.E.2d 56, 60 (Ind.Ct.App. 1995), *trans. denied* (citing *Gregory & Appel, Inc. v. Duck,* 459 N.E.2d 46, 51 (Ind. Ct.App.1984)). A lease is to be construed in the same manner as any other contract. *Id.* (citing *Whiteco Indus., Inc. v. Nickolick,* 571 N.E.2d 1337, 1339 (Ind.Ct.App. 1991), *trans. denied* ).

In interpreting a contract, the courts seek to ascertain the intent of the parties and will accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the terms to be conflicting. *Boswell Grain & Elevator, Inc. v. Kentland Elevator & Supply, Inc.,* 593 N.E.2d 1224, 1226 (Ind. Ct.App.1992). Normally, the intention of parties to a contract is to be determined from the four corners of the document. *McCae Management Corp. v. Merchants Nat'l Bank & Trust Co. of Indianapolis,* 553 N.E.2d 884, 887 (Ind.Ct.App.1990), *trans. denied.* It is expressed by the clear language thereof. *Id.*

First, we note that Zawistoski amended her complaint to allege a separate claim for breach of contract and for breach of warranty. Her argument that the two causes of action are different is well-taken. As this court explained: "Although closely related, the two actions are not identical. A warranty is a promise, usually collateral to the principal contract, although not necessarily so." *Nelson v. Marchand,* 691 N.E.2d 1264, 1271 n. 8 (Ind.Ct.App.1998). She fails, however, to explain how these two different theories apply in this case. For both causes of action, Zawistoski relies upon the same contractual provision: Glick's duty to maintain the common areas. Therefore, in this case we regard the two causes of action as the same.[1]

---

1. In the proper case, there is no doubt that both theories could be maintained. For instance, if the parties had executed a broad-form lease, with no specific duties or cove-nants, and Glick made a collateral warranty, the two theories of breach of contract and breach of warranty would be distinct. This is not the case here, though, and Zawistoski

■ A warranty is a promise relating to past or existing fact that incorporates a "commitment by the promisor that he will be responsible if the facts are not as manifested." *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 28 (Ind.1999) (citing 1 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 1:2 (4th ed. 1990)). Zawistoski contends that the lease created an express warranty on the part of Glick to ensure the safety of its residents. She relies on paragraph 10(a)(2), which states: "The Landlord agrees to ... maintain the common areas and facilities in a safe condition." *Record* at 125. She argues that the plain meaning of this language is that the common areas are, and at all times will remain, safe. She emphasizes that Cambridge Square is a development designed for and marketed to senior citizens and notes that much of the marketing literature highlights that the complex is inordinately accessible and caters to the needs and concerns of the elderly. Thus, she argues, lessees entering into lease agreements with Glick may be doing so in reliance on this added safety and accessibility. She contends that the lease should be construed to honor this expectation and that to construe it otherwise would be to interpret the contract inconsistent with its purpose.

Glick argues that reading the lease as a whole leads to the conclusion that the provision upon which Zawistoski relies was intended merely to express Glick's common law duty to its lessees. We agree with Glick.

■ At common law, the landlord has a duty of reasonable care that the common ways and areas are maintained in a reasonably fit and safe condition. *Frost v. Phenix*, 539 N.E.2d 45, 48 (Ind.Ct.App. 1989) (citing *LaPlante v. LaZear*, 31 Ind. App. 433, 68 N.E. 312 (1903); *Coleman v. DeMoss*, 144 Ind.App. 408, 246 N.E.2d 483 (1969); *Rossow v. Jones*, 404 N.E.2d 12 (Ind.Ct.App.1980)). Read in context, Section 10.2 mirrors this duty. It states:

relies on the same contractual language to

"10. *Maintenance* :

  a. The Landlord agrees to:

    . . . .

    (2) maintain the common areas and facilities in a safe condition;

    . . . .

    (4) maintain all equipment and appliances in safe and working order;

    (5) make necessary repairs with reasonable promptness;

    . . . .

  b. The Tenant agrees to:

    . . . .

    (5) give the Landlord prompt notice of any defects in the plumbing, fixtures, appliances, heating and cooling equipment or any other part of the unit or related facilities."

*Record* at 125. Paragraph 10 obligates Glick both to maintain the common areas and to make necessary repairs with reasonable promptness. These are stated as co-equal obligations, neither of more prominence than the other. The same paragraph requires the tenant to give notice of defects. Thus, the contract contemplates that facilities in the common area will, from time to time, require repairs. When they do so, Glick promises to repair them with reasonable promptness. The contrary conclusion creates for Glick the impossible burden of maintaining the common areas in such a manner that no one could ever be injured. The trial court correctly concluded that such an interpretation could not have been intended. Further, another provision indicates Glick's desire to limit its liability.

"27. *Landlord's Liability* : Except for intentional or negligent acts or omissions by Landlord or its agents, Landlord shall not be liable to Tenant for damage of any kind, or for any cause whatsoever, either by fire, water, steam, gas, electricity or heat, or the use thereof, or by any failure or malfunction upon

support both theories.

the part of any machinery or equipment, or any combination of said conditions, on said premises or adjacent thereto, to the person or property of the Tenant or persons claiming by, through or under the Tenant."

*Record* at 131. The inclusion of this provision indicates the parties' intent that Glick would not be an insurer of its lessees, including Zawistoski. The plain and unambiguous language of the contract expresses Glick's recognition of its common law duty as a lessor.

■ Zawistoski's interpretation of paragraph 10(a)(2) defies common experience and renders meaningless other provisions of the contract. For instance, the provision requiring Glick to repair defects and the provision requiring tenants to notify Glick of defects would both be superfluous if Glick was warranting that such defects would never exist. We make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Abbey Villas Dev. Corp. v. Site Contractors, Inc.,* 716 N.E.2d 91, 100 (Ind.Ct. App.1999). Thus, we cannot accept Zawistoski's interpretation.

Zawistoski urges us to apply a higher standard in this case, because it involves elderly renters. She contends that Glick is not providing the "goods" it advertises, by stating that it caters to the needs of the elderly, but not offering anything beyond the common law duty of any landlord. She argues that elderly lessees may pay more for this promise of "extra" service, but get nothing in return. There is, however, no evidence that Zawistoski gave consideration to enter into a Cambridge lease beyond that which she would have given to rent elsewhere. Further, Zawistoski's argument overlooks the fact that she may indeed have received the benefit of a rental unit and common areas designed to be accessible by those with decreased mobility, and she does not claim that Glick breached these terms of the contract. We decline Zawistoski's invitation to read into the contract terms to which the parties did not agree.

■ Zawistoski also analogizes to insurance law and refers to the lease agreement here as a "contract of adhesion," entered into by parties with vastly different bargaining power. Glick is in the business of managing and leasing apartments. We see no reason to apply insurance principles here. While it may be true that the parties were in a somewhat unequal bargaining position, this is true in many contractual relationships. Further, in this case, Zawistoski certainly had the option of leasing an apartment elsewhere if she did not like the terms of the lease with Glick. Moreover, we reject Zawistoski's attempt to portray people over the age of sixty-two as feeble, infirm, and requiring assistance with entering into a basic contract. The legal presumption of competence does not disappear as one ages, and adults should be entitled to enter into contracts until there is cause to believe they no longer have the capacity to do so.

Finally, Zawistoski notes that express warranties arise by operation of law in the context of the sale of consumer goods. She urges this court to apply similar protections to lease agreements. Courts in other jurisdictions have found no reason to adopt the warranties available in the sale of goods to residential leases. *See, e.g., Curry v. Davis,* 241 A.D.2d 924, 661 N.Y.S.2d 359, 360 (1997) (implied and express warranty causes of action properly dismissed because lessor did not sell goods to lessee). Jurisdictions which have recognized similar warranties in conjunction with the leasing of real estate have done so statutorily. *See, e.g., Francais v. Cusa Bros. Enters., Inc.,* 53 A.D.2d 24, 385 N.Y.S.2d 183, 184 (1976) (recognizing statutory implied warranty of fitness for use in residential lease).

We agree with the trial court that there is no genuine issue of material fact. The parties' lease did not create a warranty of

safety for the lessees of Cambridge Square.

Affirmed.

BAKER, J., and RILEY, J., concur.