Naomi HARRIS, Appellant–Plaintiff,

v.

Patrick TRAINI, Kay Traini, Michael Traini and Quakertown Marina, Inc., Appellees–Defendants.

No. 89A04–0012–CV–515.

Court of Appeals of Indiana.

Nov. 21, 2001.

Rehearing Denied, Jan. 22, 2002.

D. Bruce Kehoe, Ralph E. Dowling, William E. Lukens, Wilson, Kehoe & Winingham, Indianapolis, IN, Attorneys for Appellant.

Thomas M. Weinland, Ronald W. Frazier, Frazier & Associates, Indianapolis, IN, Ryan Duffin, Robert W. Hash, Jennings Taylor Wheeler & Bouwkamp, Carmel, IN, Attorneys for Appellees.

### OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Naomi Harris appeals the trial court's entry of summary judgment in favor of Patrick Traini, Kay Traini (collectively "the Trainis"), Michael Traini ("Michael"), and Quakertown Marina, Inc. ("Quakertown"), on her negligence claims. Harris presents several issues for our review which we consolidate and restate as:

1. Whether an intervening cause immunized Michael from liability.

2. Whether genuine issues of material fact preclude summary judgment for the defendants.

We affirm in part, reverse in part, and remand for further proceedings.[1]

### FACTS AND PROCEDURAL HISTORY

On June 25, 1996, the Trainis gave Michael, their seventeen-year-old son, per-

---

1. We heard oral argument at Vincennes University on October 2, 2001.

mission to have friends visit the Trainis' houseboat, which was moored on Brookville Reservoir. Despite their knowledge that Michael had previously been arrested for possession of marijuana,[2] the Trainis did not supervise or otherwise monitor Michael and his friends' use of the boat. That afternoon, Ron Anderson, a twenty-one-year-old acquaintance of Michael's, brought Jessica Legear, Harris' seventeen-year-old daughter, Nathan Marling, and two other minors to the Trainis' boat to see if Michael was there. Although Michael did not know Anderson's friends, he invited everyone on board the boat, where alcohol and marijuana were already present.[3] Marling observed Michael and the others consume alcohol and marijuana while on the boat that day.

Later in the afternoon, Legear and Marling were sitting together at the back of the boat. Legear was talking about jumping into the water, and Marling pushed her in. Marling was "playing around" when he pushed Legear. Legear had not told anyone that she was unable to swim, and she drowned before anyone could pull her out of the water. A juvenile court entered a true finding of reckless homicide against Marling in Legear's death.

As members of the Quakertown Marina, the Trainis, including Michael, were allowed to take a shuttle operated by Quakertown to reach their boat, and the Quakertown shuttle likewise transported the Trainis' guests from the marina to the Trainis' boat. On the date of Legear's death, the Quakertown shuttle took Legear and her friends to the Trainis' boat. Anderson, however, returned to the marina to retrieve alcohol, which he then transported to the Trainis' boat via the Quakertown shuttle.

Harris filed a complaint, alleging that the Trainis, Michael, and Quakertown were each negligent in causing Legear's death. Each defendant moved for summary judgment, which the trial court granted following a hearing. Harris now appeals.

## DISCUSSION AND DECISION

### Standard of Review

 In determining the propriety of summary judgment, we apply the same standard as the trial court. *Jesse v. American Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Id.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co., Inc.* 727 N.E.2d 790, 792 (Ind.Ct.App.2000).

 We note that the trial court made findings and conclusions in support of its summary judgment entries. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *See Ledbetter v.*

---

**2.** The Trainis voluntarily enrolled Michael, then fifteen years old, in a drug treatment program.

**3.** Anderson had previously visited the Trainis' houseboat as Michael's guest, and on each occasion he observed a cooler stocked with beer sitting on the deck and marijuana kept under the couch in a sitting area. Also on each previous occasion, he observed alcohol and marijuana being consumed on board.

*Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind.Ct.App.2000), *trans. denied.* If the trial court's summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

### Issue One: Intervening Cause

 Harris contends that the trial court erred when it found, as a matter of law, that Marling's conduct "[broke] any causal connection" between Michael's alleged negligence and Legear's death. Brief of Appellant at 51. Under common law, independent intervening conduct precludes the original wrongdoer's liability when the later conduct constitutes a cause interrupting the natural sequence of events, turning aside their course, preventing the natural and probable result of the original act or omission, and producing a result that could not have been reasonably anticipated. *L.K.I. Holdings, Inc. v. Tyner*, 658 N.E.2d 111, 119 (Ind.Ct.App.1995), *trans. denied.* Intervening cause, therefore, acknowledges a defendant's negligence, yet absolves the defendant of liability when the negligence is deemed remote. *Id.*

 This court has previously concluded that the adoption of comparative negligence, with its apportionment of fault, renders the protection of a remote actor unnecessary. *See id.* In other words, the comparison of fault inherent in the doctrine of intervening cause has been incorporated into our comparative fault system. *See id.* at 120. Here, if Marling's conduct was a proximate cause of Legear's death,

that does not immunize the defendants from liability for damages proximately caused by their negligence. *See id.* Rather, Marling's conduct triggers the apportionment principles of comparative fault, and the foreseeability of his negligence is simply a matter for the fact finder to consider in allocating fault. *See id.* Accordingly, we conclude that the trial court erred when it found that Marling's conduct was an intervening cause which absolved Michael of liability for Legear's death.[4]

### Issue Two: Negligence

#### A. Michael and the Trainis

Harris contends that the trial court erred when it entered summary judgment in favor of Michael and the Trainis. Specifically, she maintains that Legear was an invitee of Michael and the Trainis and that questions of fact exist regarding whether they breached the duty of care owed to Legear. Michael and the Trainis respond that they owed no duty to protect Legear from Marling's unforeseeable criminal act.[5]

 We note that Michael and the Trainis invoked the law of premises liability in support of their summary judgment motions.[6] For the first time on appeal, they contend that this case "is not appropriately analyzed under premises liability law" because they are not *landowners* with respect to the houseboat, and Legear's death did not occur on *land*. Brief of Appellees Patrick, Kay and Michael Traini at 10. It is axiomatic that a party may not

---

4. The parties address the issue of intervening cause with respect to Michael, the Trainis, and Quakertown. Our review of the trial court's findings and conclusions, however, indicates that the trial court only addressed intervening cause with respect to Michael.

5. None of the defendants argues that Legear was contributorily negligent.

6. We also note that each defendant alleges immunity from liability under the Recreational Use Statute ("IRUS"), Indiana Code Section 14–22–10–2. However, that statute only applies to causes of action that accrued after June 30, 1997. And the predecessor statute, Indiana Code Section 14–2–6–3, was repealed in 1995. As such, none of the defendants here is immune under the IRUS.

raise an issue on appeal which was not first presented to the trial court. *See Mitchell v. Stevenson*, 677 N.E.2d 551, 558 (Ind.Ct.App.1997), *trans. denied.* Accordingly, the issue is waived. Waiver notwithstanding, we find that premises liability principles apply to the facts of this case. The incident occurred on a large houseboat equipped with a kitchen and bathroom. Indeed, the Trainis "used the houseboat as a weekend getaway." We see no reason to distinguish the Trainis' houseboat from a residence located on land. *See, e.g., Frasca v. Prudential–Grace Lines, Inc.*, 394 F.Supp. 1092, 1100 (D.C.Md.1975) (applying premises liability analysis in case involving injury to plaintiff working on defendant's ship).

The tort of negligence is comprised of three elements: 1) a duty on the part of the defendant in relation to the plaintiff; 2) a failure by the defendant to conform its conduct to the requisite standard of care; and 3) an injury to the plaintiff proximately caused by the failure. *Estate of Pflanz v. Davis*, 678 N.E.2d 1148, 1151 (Ind.Ct.App.1997). In the absence of the existence of a duty, there can be no negligence. *Id.*

The law is well-established that a person entering upon the land of another comes upon the land either as an invitee, licensee or trespasser. *Id.* The person's status on the land defines the nature of the duty owed by the landowner to the visitor. *Id.* Accordingly, the first step in resolving a premises liability case is to determine the plaintiff's visitor status. *Id.* The visitor status then defines the duty owed from the landowner to the visitor. *Id.*

Here, on appeal, the parties dispute whether Legear was a licensee or invitee. During the summary judgment hearing, however, the Trainis' counsel stated as follows:

> [w]hen you walk onto someone's land or someone's boat you without question become a social guest. There's not any controversy in this case as to whether [Legear] was a social guest on the date of the incident.

Our supreme court has expressly held that social guests are invitees. *See Burrell v. Meads*, 569 N.E.2d 637, 643 (Ind.1991). And the Trainis' counsel's concession on this issue at the summary judgment hearing is binding on the Trainis. *See Lystarczyk v. Smits*, 435 N.E.2d 1011, 1014 (Ind. Ct.App.1982). Accordingly, it is undisputed that Legear was a social guest, or invitee, on the Trainis' houseboat at the time of her death.[7]

A landowner owes the highest duty of care to an invitee; that is the duty to exercise reasonable care for his protection while he is on the landowner's proper-

---

7. Even disregarding counsel's concession as to Legear's status, we find that, at the very least, Legear's invitation to board the Trainis' houseboat was implied. In *Burrell*, our supreme court stated that "[i]f a landowner induces a social guest to enter his land by express *or reasonably implied invitation*, then the landowner leads that guest, like any other entrant, to believe that the land has been prepared for his safety." *Burrell*, 569 N.E.2d at 643 (emphasis added). Here, although Michael was not acquainted with Legear prior to the date of the incident, Legear accompanied Michael's acquaintance Anderson to the boat.

Indeed, the undisputed facts indicate that Michael treated Legear like a social guest, engaging in conversation with her, and he never asked her to leave. In essence, while Legear was not invited aboard the Trainis' boat in advance, Michael impliedly invited her on board when she arrived with Anderson. We conclude that Legear was Michael's invitee. *See Dunifon v. Iovino*, 665 N.E.2d 51, 56 (Ind.Ct.App.1996) (holding invitee status established where plaintiff was not expressly invited but accompanied invited guest to defendant's party), *trans. denied.*

ty.[8] *Dunifon v. Iovino*, 665 N.E.2d 51, 56 (Ind.Ct.App.1996) (citing *Burrell v. Meads*, 569 N.E.2d at 639), *trans. denied.* Our supreme court has adopted the Restatement's definition of this duty:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Burrell*, 569 N.E.2d at 639–40 (citing RESTATEMENT (SECOND) OF TORTS § 343 (1965)). The duty of reasonable care extends not only to harm caused by a condition on the land but also to activities being conducted on the land. *Estate of Pflanz*, 678 N.E.2d at 1151.

Where, as here, a duty of care exists, the "determination of whether a breach of duty occurred is a factual question which requires an evaluation of the landowner's conduct with respect to the requisite standard of care." *Id.* (quoting *Kinsey v. Bray*, 596 N.E.2d 938, 944 (Ind. Ct.App.1992), *trans. denied*). In this regard, our supreme court has noted that "if the facts are in dispute, or if reasonable men may draw different conclusions from undisputed facts, the question of negligence is one for the jury." *Id.* (quoting *Lincoln Operating Co. v. Gillis*, 232 Ind. 551, 114 N.E.2d 873, 875 (1953)).

Further, "[t]he question of whether and to what extent landowners owe any duty to protect their invitees from the criminal acts of third parties has been the subject of substantial debate among the courts and legal scholars in the past decade." *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 971 (Ind.1999). And "while landowners are not to be made the insurers of their invitees' safety, landowners do have a duty to take reasonable precautions to protect their invitees from foreseeable criminal attacks." *Id.* To determine whether a criminal act was foreseeable such that a landowner owed a duty to take reasonable care to protect an invitee from the act, we implement a totality of the circumstances test. *See id.* at 971–73. That test permits courts to consider all of the circumstances to determine duty. *Id.* at 973. A substantial factor in the determination of duty is the number, nature, and location of prior similar incidents, but the lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable. *Id.*

Here, Michael invited several people, including Legear, on board his parents' houseboat, and questions of fact exist regarding whether he provided alcohol and marijuana to his guests. It is undisputed, however, that Michael witnessed Legear consume alcohol on the Trainis' boat be-

---

8. We reject the Trainis' reliance on our supreme court's opinion in *Martin v. Shea*, 463 N.E.2d 1092 (Ind.1984). That case involved a guest who drowned as a result of "horseplay" at the defendant's pool party. The trial court dismissed the plaintiff's complaint for failure to state a claim, and, on transfer, our supreme court affirmed the trial court. Because *Martin* preceded *Burrell v. Meads* by several years, a social guest was, at that time, considered merely a licensee. The court cited Prosser for the rule that "[a] licensee has no right to demand that the occupier change his method of conducting activities for his safety[.]" *Martin*, 463 N.E.2d at 1095. Clearly, since *Burrell*, the standard has changed. As such, we do not find *Martin* dispositive here.

fore she drowned. And Marling testified that Michael and Legear, along with the others, smoked marijuana together on the boat. Given the danger inherent in the use of alcohol and drugs aboard a boat on a reservoir, we cannot say, as a matter of law, that it was not reasonably foreseeable that one of Michael's teenaged guests would become impaired and drown. Moreover, under the circumstances, it was reasonably foreseeable that teenagers under the influence of drugs or alcohol would engage in horseplay, such as occurred when Marling gave Legear a "slight push" into the water.

■■■ The dissent contends that we "presuppose" that Michael and the others were under the influence of drugs or alcohol. But Marling testified that he observed Legear consume anywhere from six to eight alcoholic beverages and smoke one or two joints on the Trainis' boat that afternoon, that everybody on board was smoking marijuana, and that he "thought" everybody was drinking alcohol. Record at 866, 891. Given this evidence, we cannot say that Michael did not have a duty to ask Legear and the others to leave his parents' boat or, in the alternative, to attempt to prevent the consumption of alcohol and marijuana aboard the boat. Whether Michael exercised the requisite

degree of care for Legear's safety under the circumstances is a question for a trier of fact. We conclude that the trial court erred when it found, as a matter of law, that Michael did not breach any duty to Legear.[9]

■■■ A determination of the Trainis' liability to Harris is, however, another matter, since they were not present at the time of Legear's death. As a general rule, the common law does not hold a parent liable for the tortious acts of her minor children. *Wells v. Hickman,* 657 N.E.2d 172, 176 (Ind.Ct.App.1995). However, a child's negligence may be imputed to his parent where the parent entrusts the child with an instrumentality which, because of the child's lack of age, judgment, or experience, may become a source of danger to others. *Ross v. Lowe,* 619 N.E.2d 911, 915 (Ind.1993) (citation omitted).

■■■ Here, the Trainis gave their minor son, Michael, permission to have friends aboard their houseboat. Despite Michael's history of drug abuse, and despite the known presence of alcohol on the premises,[10] the Trainis did not supervise Michael's use of the boat on June 25, 1996. Indeed, Michael and his friends were using alcohol and marijuana on the Trainis' houseboat that day. Given this evidence, a

**9.** The dissent contends that, under the totality of the circumstances test, Legear's statements to Michael that she had been swimming in a farm pond earlier that day and that she wanted to go swimming with him at a nearby beach preclude issues of material fact concerning whether Michael exercised the requisite degree of care for Legear's safety. The dissent maintains that "one cannot be negligent for failing to foresee that another, who would propose to go swimming, would actually not know how to swim." The issue, however, is not whether Legear knew how to swim, but whether the alcohol and marijuana that she and the others consumed on board the Trainis' boat that afternoon was a proximate cause of her death. Indeed, if we be-

lieve Marling's testimony regarding the extent of Legear's consumption, she would have been so impaired that an ability to swim might not have prevented her from drowning. Moreover, whether Legear told Michael that she could swim goes to the issue of her comparative fault, an issue not raised on appeal.

**10.** The Trainis kept alcohol in the houseboat's kitchen. Also, in light of the evidence that Anderson observed a cooler containing alcohol on deck every time he visited the boat, a reasonable inference could be made that the Trainis knew or should have known that Michael and his friends frequently consumed alcohol on board.

jury could reasonably conclude that Michael lacked the judgment necessary to keep the houseboat from being a source of danger to invitees. *See id.* We conclude that questions of fact exist regarding whether Michael's negligence is imputable to the Trainis pursuant to the dangerous instrumentality exception set out in *Ross,* 619 N.E.2d at 915 (finding question of fact existed regarding parent's liability for child's failure to adequately restrain dog when meter reader entered back yard).

■ In sum, viewing the evidence in a light most favorable to Harris, we find that there are unresolved factual issues as to whether Michael and the Trainis breached their duty of reasonable care. Although the trial court may not believe that Harris will be successful at trial, summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *See Estate of Pflanz,* 678 N.E.2d at 1152.

## B. Quakertown

Harris also contends that the trial court erred when it entered summary judgment in favor of Quakertown. Specifically, she maintains that Legear was Quakertown's invitee and that questions of fact exist regarding whether Quakertown breached the duty of care owed to Legear. We cannot agree.

■ "The thread through the law imposing liability upon occupancy of premises is control." *Great Atlantic & Pacific Tea Co. v. Wilson,* 408 N.E.2d 144, 150 (Ind.Ct.App.1980). "[O]nly the party who controls the land can remedy the hazardous conditions which exist upon it and only the party who controls the land has the right to prevent others from coming onto it. Thus, the party in control of the land has the exclusive ability to prevent injury from occurring." *City of Bloomington v. Kuruzovich,* 517 N.E.2d 408, 411 (Ind.Ct. App.1987), *trans. denied.*

■ Here, Legear's death occurred when she was pushed off the side of the Trainis' privately-owned houseboat. Harris has not demonstrated that Quakertown had any control over the Trainis' houseboat at the time of Legear's death.[11] Accordingly, the trial court did not err when it found that Quakertown did not owe Legear a duty of reasonable care once she boarded the Trainis' houseboat.[12]

11. The record indicates that Quakertown had a right to move the Trainis' houseboat in the event of an emergency, but Quakertown did not even have keys to the boat. These facts do not support a finding that Quakertown had a right to control the Trainis' houseboat on the date of the incident.

12. We reject Harris' argument that Quakertown's duty of reasonable care, owed while she was aboard the shuttle, extended to the Trainis' houseboat. Harris cites *Ember v. B.F.D., Inc.,* 490 N.E.2d 764, 772 (Ind.Ct.App. 1986), where this court held that "[a] duty of reasonable care may be extended beyond the business premises when it is reasonable for invitees to believe the invitor controls premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invita-tion." This court has applied that rule in cases involving injuries occurring in parking lots adjacent to invitors' businesses, recognizing that in some cases an invitor's "business activities extended beyond its legal boundaries." *Id.* We see no reason to apply the rule set out in *Ember* here.

We also reject Harris' argument that Quakertown assumed a duty of reasonable care to "control access" to the Trainis' houseboat. Brief of Appellant at 42. Harris contends that Quakertown was in a position to prevent the transport of alcohol to the Trainis' houseboat, which was full of minors, and that Quakertown breached its assumed duty of care to Legear when it allowed Anderson to bring alcohol aboard the boat. However, Harris has not demonstrated that Quakertown assumed any such duty.

Moreover, even assuming that Quakertown owed Legear a duty that extended to activities aboard the Trainis' houseboat, Harris cannot demonstrate any breach of such a duty. A defendant in a negligence action may obtain summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim. *Ozinga Transp. Systems, Inc. v. Michigan Ash Sales, Inc.*, 676 N.E.2d 379, 383 (Ind.Ct. App.1997), *trans. denied.* Quakertown owed its invitees a duty to transport them safely to and from boats moored on Brookville Reservoir. Quakertown also had a policy prohibiting minors from transporting alcohol to boats using their shuttle service. Here, Anderson was of legal age to purchase and drink alcoholic beverages, and there is no evidence that anyone other than Anderson carried alcohol aboard the Quakertown shuttle on the date of Legear's death. Harris does not allege any facts from which a reasonable inference could be made that Quakertown breached a duty of care owed to Legear. Under these circumstances, we conclude that, as a matter of law, Quakertown did not breach any duty of care owed to Legear. The trial court did not err when it entered summary judgment in favor of Quakertown.

Affirmed in part, reversed in part, and remanded for further proceedings.

BAILEY, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

BAKER, Judge, concurring in part and dissenting in part.

While I agree with the majority's decision to affirm the grant of summary judgment for Quakertown Marina, Inc., I respectfully dissent from the reversal of the trial court's denial of summary judgment with respect to Michael and his parents.

I embrace the "totality of the circumstances" test in determining whether a landowner should be exposed to potential liability for the criminal act of a third person. *See Delta Tau Delta v. Johnson,* 712 N.E.2d 968, 971 (Ind.1999). I am compelled to part ways, however, with the majority's application of this test as it relates to the designated evidence that was put before the trial court. First, the majority presupposes that the teenagers aboard the houseboat were "under the influence of drugs or alcohol." Op. at 224. Marling initially testified in his deposition that he thought everyone on the boat was drinking. He then acknowledged that some of the people might not have been drinking. The evidence does not establish that Michael knew anyone was intoxicated at the time of the incident. The uncontroverted evidence establishes that Michael had consumed less than one beer prior to the incident, and there has been no showing that Michael supplied Legear with any intoxicant. Marling testified that he did not know who supplied the marijuana or who may have supplied Legear with any alcohol. Moreover, none of the alcohol stored on the houseboat by his parents was consumed on the day of the incident, and the evidence is undisputed that Michael did not make the others aware of the alcohol that his parents kept on the houseboat because he did not want to get into trouble.

I would also note that the designated evidence established that, prior to the incident, Legear had commented to the others that she was interested in swimming at a beach near the marina. Jessica remarked that she had been swimming with a friend earlier in the day. In my view, one cannot be negligent for failing to foresee that another, who would propose to go swim-

ming, would actually not know how to swim. Thus, in applying the "totality of the circumstances" test set forth in *Delta Tau Delta*, I cannot agree that a genuine issue of material fact remains as to whether Michael exercised the requisite degree of care for Legear's safety. I would affirm the trial court's judgment entered in Michael's favor.

With respect to the potential liability of Michael's parents, the majority acknowledges the general rule that parents are not liable for the tortious acts of their minor children. Op. at 224 (citing *Wells v. Hickman*, 657 N.E.2d 172, 176 (Ind.Ct.App. 1995)). An exception to this "no liability" rule exists, though, when the child is entrusted with an instrumentality which, "because of the child's lack of age, judgment, or experience, may become a source of danger to others." Op. at 224 (citing *Ross v. Lowe*, 619 N.E.2d 911, 915 (Ind.1993)). The imposition of a duty with respect to a parent in such a circumstance is limited to incidents where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. *Wells*, 657 N.E.2d at 177–78.

I cannot agree with the majority's notion that "Michael's history of drug abuse" was a factor in imputing knowledge on the part of the Trainis to exercise greater control or supervision over their son. Specifically, the designated evidence showed that Michael had one arrest for marijuana possession prior to the incident. He then completed a drug counseling program. Moreover, the evidence is equivocal at best as to whether Michael had used marijuana on June 25, 1996.[13] I thus cannot agree that questions of fact exist regarding whether any alleged negligence on Michael's part could be imputed to his parents under the "dangerous instrumentality" exception on this basis.

The undisputed evidence also shows that the Trainis maintained the requisite safety equipment on the houseboat. There is no evidence showing that the Trainis consented to, directed, or sanctioned any wrongdoing. To the contrary, they established rules for Michael to follow, including those that were taught by the Coast Guard. The Trainis prohibited Michael from inviting people onto the houseboat without their permission, and he was forbidden to use alcohol or illegal drugs. In my view, the parents' knowledge that Michael had previously smoked marijuana does not rise to the level of an actual and immediate knowledge of his incapacity to operate the houseboat. The totality of the circumstances here does not dictate a determination that the Trainis should be faced with any potential liability. To hold otherwise would inappropriately render the Trainis an insurer of Legear's safety.

Finally, there is no evidence that the Trainis had ever met Legear or Marling. Hence, there is nothing to suggest that they might have reasonably foreseen that Marling would push Legear from the houseboat into the lake and cause her death. In essence, there is no showing that the Trainis breached any duty here that may have prevented Legear's drowning. Given these circumstances, I cannot agree that any genuine issues of material fact exist as to whether any negligence on Michael's part may be imputed to the Trainis. Therefore, I vote to affirm the trial court's judgment in all respects.

---

13. When Marling was asked during deposition as to what had occurred on the boat, he responded that "[a] couple of people were drinking, a couple of people were smoking weed." R. at 866. Marling later opined that Jessica was smoking "with [e]verybody that was on the boat." R. at 891. Michael denied smoking marijuana that day.